No. 11-55805

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| PACIFIC ASIAN ENTERPRISES, a California corporation; et. al., | ) ) ) |
| Plaintiffs - Appellants, | ) ) |
| v. | ) ) |
| CROSS CHARTERING N.V., a foreign limited liability company; et al., | ) ) ) |
| Defendants - Appellees. | ) ) |

D.C. No. 3:10-cv-01335-LAB-WVG
Southern District of California,
San Diego

Appeal From The United States District Court
For The Southern District of California

--------------------------------------------------------
APPELLANTS' OPENING BRIEF
--------------------------------------------------------

GIBSON ROBB & LINDH, LLP
Stanley L. Gibson, SBN 047882
Konstantin Savransky, SBN 267707
201 Mission Street, Suite 2700
San Francisco, CA 94105
Telephone: (415) 348-6000

Attorneys for Plaintiffs - Appellants
PACIFIC ASIAN ENTERPRISES, CORP.
and RLI INSURANCE CO.

## <u>CORPORATE DISCLOSURE STATEMENT</u>

PACIFIC ASIAN ENTERPRISES, CORP. is a California corporation. It has no parent corporation and no publicly held corporation owns 10% or more of PAE stock.

RLI INSURANCE COMPANY is a wholly owned subsidiary of RLI CORPORATION, an Illinois corporation. RLI CORPORATION is publicly traded on the New York Stock Exchange.

# **TABLE OF CONTENTS**

Page Nos.

JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT REGARDING ADDENDUM TO BRIEF. . . . . . . . . . . . . . . . . 3

STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    I.    CC'S BOL DOES NOT INCORPORATE COGSA
        FOR ON-DECK CARRIAGE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          A.    CC's CLAUSE PARAMOUNT LACKS THE
               CLARITY REQUIRED TO INCORPORATE
               COGSA INTO THE CONTRACT OF CARRIAGE
               FOR THE NORDHAVN SHIPMENT BECAUSE
               IT INCORPORATES COGSA WITH SECTION 1
               (C)-BUT DOES NOT NEGATE THAT
               SECTION'S EXCLUSIONARY EFFECT ON
               DECK-LOADED GOODS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

          B.    THE TANDEM PHRASES "CARRIED ON
               DECK" AND "BUT IN ALL OTHER RESPECTS"
               FAIL TO INCORPORATE COGSA INTO THE
               BOL FOR ON-DECK CARRIAGE. . . . . . . . . . . . . . . . . . . . 15

          C.    THE SUPERSEDED BOOKING NOTE DOES NOT
               HELP TO INCORPORATE COGSA. . . . . . . . . . . . . . . . . . 19

    II.    IN THE UNITED STATES, THE HARTER ACT
        APPLIES TO THE NORDHAVN SHIPMENT. . . . . . . . . . . . . . . . 21

          A.    BECAUSE CC'S BOL DOES NOT INCORPORATE
               COGSA FOR ON-DECK CARRIAGE, THE HARTER
               ACT APPLIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

       B.    THE HARTER ACT APPLIES TO CARRIAGE
             BETWEEN FOREIGN AND DOMESTIC PORTS. . . . . . . 23

III.   BELGIAN LAW WILL APPLY IN BELGIUM... . . . . . . . . . . . . . . 29

       A.    THE BOL DOES NOT INCORPORATE ANY U.S.
             LAW AND MAKES BELGIAN LAW APPLICABLE
             IN BELGIUM.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

       B.    CC'S OFFERED STIPULATION DOES NOT
             MAKE U.S. LAW APPLICABLE IN BELGIUM.. . . . . . . . 31

IV.   UNDER SKY REEFER, THE BOL'S FORUM
       SELECTION CLAUSE IS UNFORCEABLE. . . . . . . . . . . . . . . . . 33

       A.    THE FORUM SELECTION CLAUSE IS
             UNENFORCEABLE BECAUSE, IN THE
             ABSENCE OF COGSA'S INCORPORATION,
             A BELGIAN COURT-UNLIKE A U.S. COURT-
             WILL ENFORCE THE BOL'S EXCULPATORY
             CLAUSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

       B.    EVEN IF CC'S BOL INCORPORATED COGSA
             FOR THE NORDHAVN SHIPMENT, THE FORUM
             SELECTION CLAUSE IS UNENFORCEABLE
             BECAUSE A BELGIAN COURT-UNLIKE A U.S.
             COURT-WILL ENFORCE THE BOL'S
             EXCULPATORY CLAUSES. . . . . . . . . . . . . . . . . . . . . . . 39

       C.    THE FORUM SELECTION CLAUSE IS
             UNENFORCEABLE BECAUSE A BELGIAN
             COURT-UNLIKE A U.S. COURT-WILL NOT
             APPLY THE FAIR NOTICE AND OPPORTUNITY
             DOCTRINE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . 51

STATEMENT OF RELATED CASES.. . . . . . . . . . . . . . . . . . . . . . . . . . 52

# TABLE OF AUTHORITIES

Cases                                                                    Page Nos.

*Argueta v. Banco Mexicano, S.A.*
87 F.3d 320 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Associated Metals & Minerals Corp. v. S/S Jasmine*
983 F.2d 410 (2d Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16, 40

*Blanchard Lumber Co. v. S. S. Anthony II*
259 F.Supp. 857 (S.D.N.Y 1966). . . . . . . . . . . . . . . . . . . . . . 15, 16, 22, 23, 25, 28

*Brady v. Brown*
51 F.3d 810 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*C-ART, Ltd. v. Hong Kong Islands Line America, S.A.*
940 F.2d 530 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Capital Partners Int'l Ventures, Inc. v. Danzas Corp.*
309 F. Supp. 2d 1138 (N.D. Cal. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Caterpillar Overseas, S.A. v. S.S. Expeditor*
318 F.2d 720 (2nd Cir.1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 40

*Central National-Gottesman, Inc. v. M.V. "Gertrude Oldendorff"*
204 F.Supp.2d 675 (S.D.N.Y.2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Cigna Ins. Asia Pac. Ltd. v. Expeditors Int'l of Washington, Inc.*
CV 00-1054 AHM (EX), 2001 WL 34037360, at *5, 2002
A.M.C. 1085, 1092 (C.D. Cal. Aug. 22, 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Columbia Machine, Inc. v. DFDS Transp. (US), Inc.*
CV 06-1140 ABC PLAX, 2007 WL 5173280, at *5, 2008
A.M.C. 640 (C.D. Cal. Oct. 4, 2007). . . . . . . . . . 11, 12, 13,17, 18, 19, 25, 26,47

*Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*
106 F.3d 284 (9th Cir. 1997)
*rev'd on other grounds*
523 U.S. 340 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*DeltamaxFreight Sys. v. M/V Aristotelis*
CV97-7845MMMAJWX, 1998 WL 1110395, at *4
1999 A.M.C. 1789 (C.D. Cal. Dec. 7, 1998). . . . . . . . . . . . . . . . . . . . . . 11, 12, 47

# TABLE OF AUTHORITIES
(Continued)

Cases                                                                Page Nos.

*Fed. Ins. Co. v. Union Pac. R. Co.*
09-55028, 2011 WL 2711314, at *1 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . 15, 26

*Federal Insurance Company v. Transconex, Inc.*
430 F.Supp. 290 (D.P.R. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Fireman's Fund Ins. Co. v. M.V. DSR Atlantic*
131 F.3d 1336 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 33

*Fireman's Fund Ins. Companies v. Vessel "OOCL CHALLENGE"*
CV 90-6089 MRP, 1991 WL 343373, at *1 (C.D. Cal. Oct. 3, 1991). . . . . . . . . 45

*The Ft. Morgan*
284 F. 1 (4th Cir. 1922). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Grace Line, Inc. v. Todd Shipyards Corp.*
500 F.2d 361 (9th Cir. 1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 47, 48

*General Motors Corp. v. S. S. Mormacoak*
327 F.Supp. 666 (S.D.N.Y. 1971)
*aff'd sub nom.*
*General Motors Corp. v. Moore-McCormack Lines, Inc.*
451 F.2d 24 (2d Cir. 1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Globe Solvents Co. v. The California*
167 F.2d 859 (3d Cir. 1948). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Hanover Ins. Co. v. Shulman Transp. Enters., Inc.*
581 F.2d 268 (1st Cir.1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 40

*Heli-Lift Ltd. v. M/V OOCL FAITH*
CV 00-13191 GAF(CWX), 2001 WL 34084370, at *2, 2003
A.M.C. 30 (C.D. Cal. Dec. 11, 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 48

*Institute of London Underwriters v. Sea-Land Service, Inc.*
881 F.2d 761 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 16, 17

*Indussa Corp. v. S.S. RANBORG*
377 F.2d 200 (2d Cir. 1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

# TABLE OF AUTHORITIES
(Continued)

Cases                                                              Page Nos.

*Isthmian S. S. Co. v. California Spray-Chem. Corp.*
300 F.2d 41 (9th Cir. 1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 40

*Kanematsu USA, Inc. v. M/V Ocean Sunrise*
CIV.A. 01-1702, 2003 WL 21241790 (E.D. La. May 23, 2003). . . . . . . . . . . . . . 35

*Knott v. Botany Mills*
179 U.S. 69 (1900). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 35, 37, 38, 40

*Klamath Water Users Protective Ass'n v. Patterson*
204 F.3d 1206 (9th Cir. 1999)
*opinion amended on denial of reh'g*
203 F.3d 1175 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Majestic Electronics, Inc. v. M/V JIN HE*
CV98-6750GHK(CWX)
1999 WL 694186, at *1, 1999
A.M.C. 1700 (C.D. Cal. May 10, 1999). . . . . . . . . . . . . . . . . . . . 34, 37, 38, 44, 49

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*
473 U.S. 614 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Morton v. Mancari*
417 U.S. 535 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*N. River Ins. Co. v. Fed Sea/Fed Pac Line*
647 F.2d 985 (9th Cir. 1981). . . . . . . . . . . . . . . . . . . 24, 25, 26, 28, 38, 39, 42, 43

*New York, N. H. & H. R. Co. v. Nothnagle*
346 U.S. 128 (1953). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Nippon Fire & Marine Ins. Co. v. M/V Spring Wave*
92 F. Supp. 2d 574 (E.D. La. 2000). . . . . . . . . . . . . . . . . . . . . . . . . 34, 37, 38, 44, 49

*Pannell v. United States Lines Co.*
263 F.2d 497 (2d Cir. 1959). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

# TABLE OF AUTHORITIES
(Continued)

Cases                                                                 Page Nos.

*Pannell v. the American Flyer*
157 F.Supp. 422 (S.D.N.Y. 1957)
*decree modified sub nom.*
*Pannell v. United States Lines Company*
263 F.2d 497 (2d Cir. 1959). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*
741 F.2d 273 (9th Cir.1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Ralston Purina Co. v. Barge Juneau & Gulf Caribbean Marine Lines, Inc.*
619 F.2d 374 (5th Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Saudi Pearl Ins. Co., Ltd. v. M.V. Aditya Khanti*                      11, 21, 22
95 CIV. 2174 (JFK), 1997 WL 291834 at *3 (S.D.N.Y. June 2, 1997). . . 23, 25, 28

*Seariver Maritime Fin'l Holdings, Inc. v. Mineta*
309 F.3d 662 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*SNC S.L.B. v. M/V Newark Bay*
111 F.3d 243 (2d Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Spradlin v. Lear Siegler Management Servs. Co.*
926 F.2d 865 (9th Cir.1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*St. Paul Mercury Indemnity Co. v. Red Cab Co.*
58 S.Ct. 586 (1938). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Starrag v. Maersk, Inc.*
486 F.3d 607 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 40

*Sunkist Growers, Inc. v. Adelaide Shipping Lines, Ltd.*
603 F.2d 1327 (9th Cir.1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 30

*Tessler Bros. (B.C.) Ltd. v. Italpacific Line*
494 F.2d 438 (9th Cir. 1974). . . . . . . . . . . . . . . . . . . . . . . . . 7, 28, 38, 43

*Thiti Lert Watana Co., Ltd. v. Minagratex Corp.*
105 F. Supp. 2d 1077 (N.D. Cal. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . 26

# TABLE OF AUTHORITIES
(Continued)

Cases                                                          Page Nos.

*Torres Lopez v. May*
111 F.3d 633 (9th Cir. 1997)............................................... 4

*Uncle Ben's Int'l Div. of Uncle Ben's, Inc. v. Hapag-Lloyd Aktiengesellschaft*
855 F.2d 215 (5th Cir.1988). .................................... 41, 42, 43

*Union Pac. R.R. v. Burke*
255 U.S. 317 (1921). ........................................... 15, 26, 45

*United States v. Bates*
146 Fed.Appx. 795 (6th Cir. 2005)..................................... 32

*United States v. M/V Marilena P*
433 F.2d 164 (4th Cir. 1969).......................................... 40

*Vector Pipeline, L.P. v. 68.55 Acres of Land*
157 F.Supp.2d 949 (N.D. Ill. 2001). .................................. 32

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*
515 U.S. 528 (1995). .............................................. 27, 38

*Vision Air Flight Serv., Inc. v. M/V Nat'l Pride*
155 F.3d 1165 (9th Cir. 1998)......................................... 45

*Watermill Exp., Inc. v. MV Ponce*
506 F. Supp. 612 (S.D.N.Y. 1981). .................................... 20

*Wemhoener Pressen v. Ceres Marine Terminals, Inc.*
5 F.3d 734 (4th Cir.1993). ........................................... 41

*Z.K. Marine Inc. v. M/V Archigetis*
808 F. Supp. 1561 (S.D. Fla. 1992)................................ 14, 29

*Z.K. Marine, Inc. v. M/V Archigetis*
776 F. Supp. 1549 (S.D. Fla. 1991)
*clarified on denial of reconsideration sub nom.*
*Z.K. Marine Inc. v. M/V Archigetis*
808 F. Supp. 1561 (S.D. Fla. 1992)................................... 22

# TABLE OF AUTHORITIES
(Continued)

Statutes                                                                Page Nos.

U.S. Const. Art. III § 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1292. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1333. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

46 U.S.C. § 30701. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12, 15, 21, 23, 24

46 U.S.C. § 30702. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23

46 U.S.C. § 30704. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

46 U.S.C. § 30701-30707. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 24

COGSA § 1. . . . . . . . . . . . . . . . . . . . . .   7, 8, 10, 11, 13, 14, 15, 17, 18, 19, 30, 39

COGSA § 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 34, 35, 40

COGSA § 12. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

COGSA § 13. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24


Other Authorities                                                       Page Nos.

Fed.R.App.P. 4(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rule of Civil Procedure 12(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 4

**JURISDICTION**

The District Court had jurisdiction of this action because it is based on a maritime claim regarding the carriage of goods be sea within the meaning of 28 U.S.C. § 1333. *See also* U.S. Const. Art. III § 2, cl. 1.

This appeal is from a final order enforcing a contractual forum selection clause pursuant to Federal Rule of Civil Procedure 12(b)(3) and disposing of all of the parties' claims via dismissal. C.R. No. 38, ER 0001-0013. Thus, appellate jurisdiction is proper under 28 U.S.C. § 1291 and 28 U.S.C. § 1292(a)(3). The order under review herein was entered April 19, 2011. *Id.* Timely Notice of Appeal was filed on May 18, 2011 pursuant to Fed.R.App.P. 4(a)(1). C.R. No. 39, ER 0021.

**STATEMENT OF ISSUES PRESENTED**

1. *What law applies to the bill of lading ("BOL") contract at issue? Did the District Court err in holding that COGSA was unambiguously incorporated into the BOL and that COGSA, not the Harter Act, applied to the BOL?*

Appellants argued that the Harter Act applied to the BOL, not COGSA. *See* C.R. No. 32, ER 0041-42, 0011-12 n.3. The District Court found COGSA was unambiguously incorporated into the BOL and that the Harter Act did not apply. C.R. No. 38, ER 0006-8.

2. *Did the District Court err in relying on an offered stipulation by CC that it would agree US law would apply if the case proceeded before a Belgian court when CC's contract was unclear on the subject?*

Appellants argued that the court could not rely on CC's offered stipulation to order dismissal. C.R. No. 37, ER 0022-0026. The District Court relied on the offered stipulation to hold that a Belgian court would properly apply the same law as a U.S. court, justifying dismissal. C.R. No. 38, ER 0007.

3. *Did the District Court err in holding that plaintiffs' rights under applicable US statutory and case law would not be lessened by enforcing the BOL's forum selection clause requiring the dispute to be resolved in a Belgian court?*

Appellants argued that the BOL's forum selection clause was unenforceable under *Sky Reefer* because a Belgian court would enforce the BOL's exculpatory clauses and fail to apply the fair notice and opportunity doctrine—and thus lessen their rights. C.R. No. 32, ER 0040-50. The District Court held that the BOL's forum selection clause was enforceable because a Belgian court would deal with the exculpatory clauses and the fair notice and opportunity doctrine in the same way as a U.S. court. C.R. No. 38, ER 0006-13.

4. *Did the District Court err by enforcing the BOL's forum selection clause where there is no subsequent opportunity for review based on the standard: "whether [Plaintiff] can walk into a [foreign] court and advance, with some meaningful hope of success, the same claims and arguments it would advance in [the district court]."*

Appellants' motion opposing the dismissal set forth the proper *Sky Reefer* standard. C.R. No. 32, ER 0037-39. The District Court instead used the standard quoted above. C.R. No. 38, ER 0013.

- 2 -

## STATEMENT REGARDING ADDENDUM TO BRIEF

All applicable statutes are contained in this opening brief or addendum to this brief.

## STANDARD OF REVIEW

In the Ninth Circuit, **where the facts are undisputed**, a district court's determination **whether or not venue is proper** is a question of law, **reviewed *de novo***. *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284, 288 (9th Cir. 1997), *rev'd on other grounds* 523 U.S. 340 (1998). Yet, although a motion to enforce a forum-selection clause is also a motion for **improper venue** pursuant to Fed.R.Civ.P. 12(b)(3), it has been reviewed for ***abuse of discretion***. *Fireman's Fund Ins. Co. v. M.V. DSR Atl.*, 131 F.3d 1336, 1338 (9th Cir. 1997) (citing *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996)). PAE and RLI respectfully request this Court apply *de novo* review to this appeal.

In *Fireman's Fund*, this Court recognized that four sister Circuit Courts apply *de novo* review for forum-selection clause dismissals. *See* 131 F.3d at 1338 n.1. Not only does the Ninth's Circuit's use of the abuse of discretion standard create inter-circuit inconsistency, but it also creates intra-circuit inconsistency as well.

The Ninth Circuit Court first announced that forum selection clause orders would be reviewed for abuse of discretion in *Pelleport. Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 280 n.4 (9th Cir.1984) (cited by *Spradlin v. Lear Siegler Management Servs.* Co., 926 F.2d 865, 867 (9th

- 3 -

Cir.1991), which, in turn, was cited by *Argueta*, 87 F.3d 320 at 323). However, unlike here, the forum selection clause in *Pelleport* dealt with **two domestic parties**, **a clause designating a domestic forum**, and **no necessity to interpret foreign or federal law** vis-a-vis a forum-selection clause. *See* 741 F.2d at 279-80. The extension of the *Pelleport* standard in subsequent decisions reviewing dismissals based on contractual, *international* forum selection clauses—which are types of dismissals based on **improper venue** pursuant to Fed.R.Civ.P. 12(b)(3)— is illogical and inconsistent when compared with the *de novo* standard used to review *domestic*, **improper venue** motions with undisputed facts. *Pelleport* can be distinguished based on its domestic nature and its progeny applying the abuse of discretion standard to international forum-selection-clause dismissals should be clarified or abrogated.

Furthermore, *de novo* review is more appropriate because the issues here, as in most maritime contract forum-selection-clause dismissals, require interpretation of: (1) pure questions of law (*see Torres Lopez v. May*, 111 F.3d 633, 638 (9th Cir. 1997)), (2) federal law (*see Seariver Maritime Fin'l Holdings, Inc. v. Mineta*, 309 F.3d 662, 668 (9th Cir. 2002)), and (3) foreign law (*see Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995)).

Where the facts are undisputed, offering a less protective standard of review for *international* forum-selection clause dismissals than for *domestic* improper venue dismissals is counterintuitive, unsound law. Here, **the facts are undisputed** and the issues purely legal. Therefore, in order to escape inconsistency and apply a standard that reflects more reasonable policy, the Court should apply the *de novo*

standard generally applied to review of improper venue motions—and not the abuse of discretion standard.

In sum, applying *de novo* review here will not only resolve a circuit split but will also ensure intra-circuit consistency with appeals for review of improper venue motions with undisputed facts and appeals raising issues of law, federal law, and foreign law.

## STATEMENT OF CASE

On June 24, 2010, Appellants Pacific Asian Enterprises ("PAE") and its insurer, RLI Insurance Company, sued Appellees Cross Chartering N.V. ("CC") and Stevedore Services of America ("SSA") for the destruction of PAE's yacht. C.R. No. 1, ER 0081-0085. They claimed breach of contract and reckless, negligent, and intentional damage to cargo. *Id.*

On January 31, 2011, CC filed a motion to dismiss the action pursuant to a forum-selection clause in the BOL, contending that the proper forum for the action was Antwerp, Belgium. C.R. No. 38, ER 0002; Civil Docket, ER 0090. PAE opposed the motion. C.R. No. 32, ER 0035-53. But on April 19, 2011, the District Court ordered the action dismissed pursuant to the clause. C.R. No. 38, ER 0001-13. This appeal followed.

## STATEMENT OF FACTS

PAE, a California corporation based in Dana Point, California, designs and sells Nordhavn yachts. *See* C.R. No. 38, ER 0001; C.R. 25-2, ER 0064-65. PAE contracts with a Taiwanese shipbuilder to build the yachts. *See* C.R. No. 38, ER

0001. CC is a "carrier" that charters and sells space on cargo ships. *Id.* As such, it issues a BOL to the cargo owners. *Id.* SSA is a stevedoring company in the Port of San Diego that unloads cargo from ships when they arrive. C.R. No. 38, ER 0001.

PAE contracted with CC to transport a Nordhavn yacht from Taiwan to San Diego, California *on the deck* of a cargo ship, the M.V. Catalonia, and issued the on-deck BOL at issue in this case, dated June 4, 2009. C.R. No. 25-2, ER 0065. CC hired SSA to unload the Nordhavn. C.R. No. 22-6, ER 0068. When the Catalonia arrived in San Diego on June 27, 2009, SSA employees attempted to unload the yacht from the ship using a pair of the ship's cranes. C.R. No. 38, ER 0002. During that process, they dropped the Nordhavn and she sank, becoming a total loss. *Id.* As a result of the loss, PAE's cargo insurer, RLI, paid to PAE the amount of $1,826,777.86. C.R. 25-2, ER 0065. This sum did not include the deductible totaling $17,839.50, which is PAE's loss as a result of the yacht being dropped. *Id.* RLI asserted a subrogation claim for $1,713,498.22 and with PAE sued the Catalonia, CC and SSA.[1] C.R. No. 1, ER 0081-85. The M.V. Catalonia is also a Defendant in this case but never returned to the jurisdiction and was thus never served. *See* C.R. No. 38, ER 0002.

## SUMMARY OF ARGUMENT

This Court has recognized that Congress enacted the Harter Act and COGSA to prevent carriers like CC, from inserting clauses into their bills of lading that

---

[1]     The hulk was sold for salvage for about $50,000.

entirely preclude liability or allow the limitation and lessening of liability through ambiguity:

> Congress passed the Harter Act and COGSA to counteract the persistent efforts of carriers, who are the drafters of ocean bills of lading, to insert all embracing exceptions to liability. One of the specific purposes of COGSA was to obviate the necessity for a shipper to make a detailed study of the fine print clauses of a carrier's regular bill of lading on each occasion before shipping a package. *Tessler Bros. (B.C.) Ltd. v. Italpacific Line*, 494 F.2d 438, 445 (9th Cir. 1974) (internal citations omitted).

BOL clauses seeking to incorporate a body of law into the BOL for carriage of cargo where the law is otherwise not applicable by its own force (*ex proprio vigore*) to the type of carriage must be especially clear. The reasons are obvious. By failing to clearly state which law will govern the parties' rights under the BOL in the event of loss to cargo, carriers will inevitably choose the law that favorably limits or precludes liability based on the particular facts, thereby depriving cargo owners of rights they reasonably thought they had under the BOL. The courts have not, and should not, hesitate to enforce the legislative goals behind COGSA and the Harter Act to prevent such outcomes.

Contrary to the District Court's finding, CC's BOL language does not clearly incorporate COGSA. No doubt that is why CC in its reply to PAE's opposition to CC's motion for the first time offered to stipulate to the application of COGSA in the Belgian court. COGSA applies to BOLs for the carriage of *goods* by sea. CC's BOL Clause Paramount (hereinafter "Clause") incorporates COGSA wholly without limitation, including COGSA's Section 1(c)—which excludes on-deck

shipments carried pursuant to an on-deck BOL, as here, from the definition of "goods" and thus from COGSA's governance. In failing to expressly negate Section 1(c)'s effect, CC's BOL incorporated COGSA's exclusion of its application to BOLs for on-deck cargo. Therefore, the BOL does not incorporate COGSA for the Nordhavn shipment, carried on-deck pursuant to the BOL.

A Belgian court will apply the law stated in the BOL to be applied—Belgian law, not COGSA since the BOL does not incorporate COGSA. In contrast, and contrary to the District Court's finding, a U.S. court would be required to apply the Harter Act because it, unlike COGSA, applies *ex proprio vigore* to cargo carried pursuant to a BOL stating on-deck carriage, and in fact carried on deck, as in this case.

CC's BOL contains exculpatory clauses relieving CC and SSA of liability for any conduct with respect to PAE's deck cargo, the very same abuses the legislation of COGSA and the Harter Act were enacted to correct. These exculpatory clauses would be enforced under Belgian law. However, because CC's BOL does not incorporate COGSA for on-deck carriage, in the U.S., the Harter Act would render those exculpatory clauses unenforceable.

Moreover, even if CC's BOL could be reasonably be interpreted to incorporate COGSA into a BOL for an on-deck shipment, an "incorporated COGSA" does not have "statute rank" because it does not apply by its own terms. Lacking that status, an "incorporated COGSA" is simply another contract term and cannot invalidate BOL clauses inconsistent with COGSA—such as CC's exculpatory clauses—that COGSA would invalidate if it applied *ex proprio vigore*.

- 8 -

Therefore, even if CC's BOL incorporates COGSA, a Belgian court will still enforce the exculpatory clauses. By contrast, a U.S. court must apply the Harter Act, which applies by its own terms, and would invalidate the exculpatory clauses pursuant to the Act. Simply put, a Belgian court has no basis based on CC's BOL to apply the Harter Act. The BOL does not reference the Harter Act, much less try to incorporate it into the BOL. As a result, a Belgian court applying Belgian law will enforce the exculpatory clauses. CC's expert on Belgian law in no way refuted this point.

Failing to appreciate that the two fora will apply different laws resulting in drastically different outcomes, the District Court dismissed suit in favor of a Belgian court. It erred in doing so because, per U.S. Supreme Court precedent, dismissal pursuant to a forum selection clause is not allowed where it will deprive a party of its statutory remedies or rights under U.S. law. If the dismissal stands, PAE and RLI will be deprived of their statutory rights because a Belgian court—unlike a U.S. court—will enforce the BOL's exculpatory clauses relieving CC and SSA of liability and will not properly apply the Supreme Court's and Ninth Circuit's fair notice and opportunity doctrine regarding enforcement of limitations on liability.

This Court is obligated to safeguard the rights that the legislative purposes behind COGSA and the Harter Act were intended to protect and place the burden of clarity in contracts of carriage drafted by carriers where it is supposed to be—with the carrier—not the cargo owner. In this case, a line ensuring clarity must be drawn and the two Acts' continuing, symbiotic purpose of preventing the use of

- 9 -

exculpatory clauses and ambiguous limitation of liability must be clearly pursued. Otherwise, cargo owners are left at the mercy of carriers, the drafters of bills of lading, as they were before passage of COGSA and the Harter Act.

## **ARGUMENT**

### I. **CC'S BOL DOES NOT INCORPORATE COGSA FOR ON-DECK CARRIAGE**

The front of BOL, below the cargo's description, states:

> CARRIED ON DECK WITH THE MERCHANTS' CONSENT AND AT THEIR RISK AS TO PERILS INHERENT IN SUCH CARRIAGE WITHOUT LIABILITY AND OR RESPONSIBILITY TO THE VESSEL OR CARRIER BUT IN ALL OTHER RESPECTS SUBJECT TO THE PROVISIONS OF THE UNITED STATES CARRIAGE OF GOODS BY SEA ACT 1936. C.R. No. 22-7, ER 0073.

The District Court correctly recognized that COGSA does not apply *ex proprio vigore* to a BOL for on-deck carriage, where the cargo is so carried, pursuant to COGSA Section 1(c) because that Section excludes from the definition of "goods" deck-loaded goods carried pursuant to an on-deck BOL.[2] C.R. No. 38, ER 0006; *Institute of London Underwriters v. Sea-Land Service, Inc.*, 881 F.2d 761, 764 (9th Cir. 1989). Appellants argued below that the Harter Act applied instead of COGSA. C.R. No. 32, ER 0040-41, 0046-47. However, the District

---

[2] COGSA Section 1(c) states: "The term 'goods' includes goods, wares, merchandise, and articles of every kind whatsoever, *except* live animals and cargo which by the contract of carriage is stated as being carried on deck and is so carried." 46 U.S.C. § 30701, Note, § 1(c) (formerly codified at 46 U.S.C. §1301(c)) (emphasis added).

Court erroneously found that the above clause "unambiguously" incorporated

COGSA into the BOL for the Nordhavn shipment. C.R. No. 38, ER 0006.

> **A. CC'S CLAUSE PARAMOUNT LACKS THE CLARITY REQUIRED TO INCORPORATE COGSA INTO THE CONTRACT OF CARRIAGE FOR THE NORDHAVN SHIPMENT BECAUSE IT INCORPORATES COGSA WITH SECTION 1(C)—BUT DOES NOT NEGATE THAT SECTION'S EXCLUSIONARY EFFECT ON DECK-LOADED GOODS.**

Parties may elect to incorporate COGSA by a "Clause Paramount" into a

contract of carriage for on-deck carriage. *Inst. of London Underwriters,* 881 F.2d at

764. However, to do so "the contract must **employ sufficiently express**

**language**." *Saudi Pearl Ins. Co., Ltd. v. M.V. Aditya Khanti*, 95 CIV. 2174 (JFK),

1997 WL 291834 at *3 (S.D.N.Y. June 2, 1997) (emphasis added) (collecting

cases); *see also Columbia Machine, Inc. v. DFDS Transp. (US), Inc.*, CV 06-1140

ABC PLAX, 2007 WL 5173280, at *5, 2008 A.M.C. 640, 647 (C.D. Cal. Oct. 4,

2007) (in a general discussion regarding the clarity needed to incorporate COGSA

into a BOL for on-deck carriage, and finding one of the incorporation clauses in

the BOL at issue insufficiently clear, the court explained that a Clause Paramount

must use "language that is sufficiently clear to guarantee" the extension of

COGSA's $500 liability limitation to on-deck goods) (quoting *DeltamaxFreight*

*Sys. v. M/V Aristotelis*, CV97-7845MMMAJWX, 1998 WL 1110395, at *4, 1999

A.M.C. 1789, 1793 (C.D. Cal. Dec. 7, 1998)[3] (citing *Inst. of London Underwriters*,

---

[3] CC and SSA are expected to argue, as they did below, that *DeltamaxFreight* instructs against incorporation of COGSA into a BOL for deck-loaded goods here. As summarized by the *Columbia Machine* court: "The [*DeltamaxFreight*] court determined that the notation on the front of the bill of lading that the cargo would be 'Stowed on Deck at Shipper's Risk and Expense' gave the shipper advance

881 F.2d at 764 (citing *Grace Line, Inc. v. Todd Shipyards Corp.*, 500 F.2d 361, 371 (9th Cir. 1974) ( "[a BOL], if clear and express, [extends] the $500 limitation on the amount of liability [of COGSA] . . . to stevedores.")))); *see also Associated Metals & Minerals Corp. v. S/S Jasmine*, 983 F.2d 410, 412-414 (2d Cir. 1993) (Clause Paramount was not "sufficient to establish an express incorporation of COGSA into the charter party"); *see also* 46 U.S.C. 30701, Note, § 13 (a BOL can incorporate COGSA for "contracts for carriage of goods by sea between any [domestic ports]," if it contains an "express statement" to that effect).

To be enforceable, incorporation clauses must be explicit regarding COGSA's application to on-deck carriage pursuant to an on-deck BOL. For example: "The defenses and limitations of [COGSA] *shall apply to goods whether carried on or under deck.*"  *Inst. of London Underwriters*, 881 F.2d at 764 (emphasis in original). Similarly, the following clause, of the two contained in the BOL at issue in *Columbia Machine*, incorporated the Hague Rules[4] for on-deck

_____

notice that the COGSA liability limitation would apply to on-deck carriage *through the Clause Paramount*." *Columbia Machine*, 2007 WL 5173280, at *7 (emphasis added). However, "the [*DeltamaxFreight*] court did not recite the Paramount Clause." *Id.* The instant case is distinguishable because Appellants are not arguing that they did not have notice of on-deck carriage as argued in *DeltamaxFreight*. *See DeltamaxFreight*, 1998 WL 1110395, at *4. Instead, PAE and RLI are arguing that CC's Clause Paramount is insufficiently express to incorporate COGSA. Because the *DeltamaxFreight* opinion does not even recite the Clause Paramount in the BOL at issue in that case, let alone analyze it, the decision is neither instructive nor analogous.

[4]     COGSA is the codified version of the Hague Rules in the United States. *Sunkist Growers, Inc. v. Adelaide Shipping Lines, Ltd.,* 603 F.2d 1327, 1333 (9th Cir.1979). But in *Columbia Machine*, they were incorporated as a stand-alone body of law. *Columbia Machine*, at *7-9.

carriage: "All such Goods, whether carried on deck or under deck . . . shall be deemed to be within the definition of goods for the purposes of the Hague Rules and shall be carried subject to those Rules." *Columbia Machine*, 2007 WL 5173280, at *3, 7-8; *e.g. SNC S.L.B. v. M/V Newark Bay*, 111 F.3d 243, 245 n.5 (2d Cir. 1997) ("Goods stowed . . . on deck shall be deemed to be stowed under deck for all purposes, including ... the [COGSA]...."). These clauses, unlike CC's Clause Paramount, use affirmative, express incorporation language or tackle head on the exclusionary effect of COGSA Section 1(c) and its Hague Rules' counterpart for on-deck carriage by proclaiming that on-deck goods will be within the definition of goods governed by the statute.

Where a Clause Paramount seeks to incorporate COGSA for on-deck carriage but fails to address COGSA's inapplicability to such carriage, the clause does not incorporate COGSA. The second of the two clauses in the BOL at issue in *Columbia Machine* exemplifies such a failed clause: "If Carriage includes carriage to, from or through a port in the United States of America, this Bill of Lading shall be subject to [COGSA]." *Columbia Machine*, 2007 WL 5173280, at *3, 5-7. This clause failed despite the fact that carriage was from a U.S. port and the front of the BOL stated: "LOADED ON DECK AT CARGO OWNERS RISK." *Id.*, at *2, 5-7. The *Columbia Machine* court found this clause did not incorporate COGSA because incorporating the Act wholly also incorporates Section 1(c)—and a Clause Paramount's failure to explicitly negate the effect of Section 1(c) for on-deck carriage is fatal to incorporation. *See id.*, at *3, 5-7. (emphasizing that the BOL's other clause paramount incorporating the Hague Rules governed because it

specifically addressed on-deck carriage and negated the effect of the Hague Rules'
version of Section 1(c) by including deck-loaded cargo within the definition of
"goods").

Courts have found incorporation clauses using the tandem phrases **"carried
on deck"** and **"but in all other respects,"** like CC's clause, clear enough to
incorporate COGSA—only if such clauses explicitly state that COGSA applies
"**notwithstanding" COGSA Section 1(c)**. There is not such language in CC's
BOL. For example, in *Pannell*, the following clause successfully incorporated
COGSA:

> **In respect of goods carried on deck, and stated herein
> to be so carried**, all risk of loss or damage by perils
> inherent in or incident to such carriage shall be borne by
> the shipper and consignee, **but in all other respects** the
> custody and carriage of such **goods shall be governed by
> the terms of this bill of lading and** the carrier shall have
> the benefit of all and the same rights, immunities,
> exceptions and limitations contained in said **Carriage of
> Goods by Sea Act, <u>notwithstanding Sec. 1(c) thereof,</u>**
> or the corresponding provision of any similar Act that
> may be applicable. *Pannell v. the American Flyer*, 157
> F.Supp. 422, 424 (S.D.N.Y. 1957) (emphasis added)
> *decree modified sub nom. Pannell v. United States Lines
> Company* 263 F.2d 497 (2d Cir. 1959); *e.g. General
> Motors Corp. v. S. S. Mormacoak*, 327 F.Supp. 666, 667-
> 68 (S.D.N.Y. 1971) (enforcing a virtually identical clause
> as in *Pannell*) *aff'd sub nom. General Motors Corp. v.
> Moore-McCormack Lines, Inc.*, 451 F.2d 24 (2d Cir.
> 1971); *see also e.g. Z.K. Marine Inc. v. M/V Archigetis*,
> 808 F. Supp. 1561, 1567 (S.D. Fla. 1992) ("[The Hague
> Rules will apply] **notwithstanding** any provision of such
> legislation which would otherwise exclude the application
> of the same to such goods.").

In contrast to clauses in cases like *Pannell*, CC's Clause uses the tandem
phrases "carried on deck" and "but in all other respects" to convey that COGSA

applies. It fails to negate Section 1(c)—clear and express language negating that Section's exclusionary effect is missing.

## B. THE TANDEM PHRASES "CARRIED ON DECK" AND "BUT IN ALL OTHER RESPECTS" FAIL TO INCORPORATE COGSA INTO THE BOL FOR ON-DECK CARRIAGE.

The fact that CC's Clause contains the words "carried on deck" does not cure its silence regarding Section 1(c): those words are part of a so-called "shipper's risk clause" (found before the phrase "but in all other respects" in the Clause)—seeking on its face to relieve CC from "liability and or responsibility" for on-deck carriage risks and the "perils inherent in such carriage." *See Blanchard Lumber Co. v. S. S. Anthony II*, 259 F.Supp. 857, 860, 866-868 (S.D.N.Y 1966); *see The Ft. Morgan*, 284 F. 1, 5 (4th Cir. 1922); *see e.g. Pannell*, 157 F.Supp. at 424. However, COGSA Section 3(8) provides, in relevant part: "Any clause . . . in a [BOL] relieving the carrier . . . from liability for loss . . . arising from negligence . . . or failure in the duties and obligations . . . or lessening such liability . . . shall be null and void and of no effect." 46 U.S.C. § 30701, Note, § 3(8).  In both *The Ft. Morgan* and *Blanchard Lumber*, the courts found under the Harter Act, COGSA's predecessor containing a section analogous to COGSA Section 3(8),[5] that the shipper's risk clauses were ineffective insofar as they tried to exculpate the respective carriers from negligence and duties of proper stowage. *Blanchard*

---

[5]      The Harter Act is presently codified at 46 U.S.C. §§ 30701–30707 (formerly at 46 U.S.C. §§ 190–196); *see Fed. Ins. Co. v. Union Pac. R. Co.*, 09-55028, 2011 WL 2711314, at *1, n.2 (9th Cir. 2011). The analogous Harter Act section states: "A carrier may not insert in a bill of lading . . . a provision avoiding its liability for loss or damage arising from negligence or fault in loading, stowage, custody, care, or proper delivery. Any such provision is void." 46 U.S.C. § 30704.

*Lumber*, 259 F.Supp. at 860, 866-868; *The Ft. Morgan*, 284 F. at 5; *see Globe Solvents Co. v. The California*, 167 F.2d 859, 863 (3d Cir. 1948) (although both the Harter Act and COGSA explicitly exempt liability for damage arising out of "perils of the sea," liability still attaches if such damage is caused partially by negligence under those Acts); *see Associated Metals & Minerals Corp. v. M/V Arktis Sky*, 978 F.2d 47, 50 (2d Cir. 1992) (The plain language of section 1303(8) (now Section 3(8)) forbids enforcement of agreements to relieve carriers of liability for negligence in carrying out the duties set forth in section 3 of COGSA); *see Hanover Ins. Co. v. Shulman Transp. Enters., Inc.,* 581 F.2d 268, 273–274 (1st Cir.1978) (invalidating a clause limiting the carrier's liability to $50 per shipment under Section 3(8)); *see also Starrag v. Maersk, Inc.*, 486 F.3d 607, 614 (9th Cir. 2007) (distinguishing exculpatory clauses from package limitations, only the latter being valid under COGSA).

Trying to ensure that its shipper's-risk clause was not subject to the COGSA Section 3(8)'s negligence limitation, CC's Clause Paramount recites the shipper's-risk clause and then states that "in all other respects"—i.e. except as applying to the shipper's risk clause—the shipment will "be subject to [COGSA]."[6] The plain purpose of the phrase "but in all other respects" is to ensure that COGSA does not

---

[6]     Courts allow partial incorporation of COGSA. *See Institute of London Underwriters v. Sea-Land Service, Inc.*, 881 F.2d 761, 766 (9th Cir. 1989). ("[BOL] terms inconsistent with COGSA . . . may be given force where COGSA is incorporated into a contract for foreign carriage to which it would not apply *ex proprio vigore*."); *see e.g. Ralston Purina Co. v. Barge Juneau & Gulf Caribbean Marine Lines, Inc.*, 619 F.2d 374, 375-376 (5th Cir. 1980) (BOL incorporated COGSA without COGSA's statute of limitation).

apply to the shipper's-risk clause. PAE anticipates that CC will argue that the phrase "carried on deck" negates the exclusionary effect of Section 1(c). However, the words "carried on deck" are part of the shipper's-risk clause, and therefore the presence of those words in the Clause Paramount does not clearly convey that COGSA will apply notwithstanding Section 1(c). Simply put, this makes the Clause confusing. Because of this patent ambiguity, CC's Clause fails to incorporate COGSA for the same reason as the unsuccessful clause in *Columbia Machine* despite the fact that, unlike in that case, CC's BOL states on-deck carriage within the Clause itself and not elsewhere in the BOL. Thus, as in *Columbia Machine*, CC's Clause incorporates COGSA with Section 1(c) but does not contain language that negates that Section's exclusionary effect—and the clause is otherwise insufficiently express to incorporate COGSA into the BOL for on-deck carriage.

At minimum, the effect of the tandem phrases "carried on deck" and "but in all other respects" is ambiguous. To find that the Clause incorporated COGSA requires forcibly slicing the words "carried on deck" out of the shipper's risk clause and construing them separately from the shipper's risk clause to counteract implicitly the exclusionary effect of COGSA Section 1(c). But this is improper because courts construe ambiguity in a BOL against the drafter, the carrier. *See C-ART, Ltd. v. Hong Kong Islands Line America, S.A.*, 940 F.2d 530, 532 (9th Cir. 1991) ("[B]ills of lading . . . as contracts of adhesion, are strictly construed against the carrier.") (internal citations omitted); *see Institute of London Underwriters v. Sea-Land Service, Inc.*, 881 F.2d 761, 767 (9th Cir. 1989). ("[A]ny ambiguity in

the [BOL] must be construed in favor of the shipper and against the carrier.") Since the effect of the words "carried on deck" is vague and cannot be construed as counteracting the exclusionary effects of COGSA Section 1(c), CC's Clause is for all practical purposes identical to the failed clause in *Columbia Machine*.

Finally, in contrast to CC's Clause and the failed clause in *Columbia Machine*, the other clause in *Columbia Machine*, like the clause in *Pannell*, provides an example of an *unambiguous*, successful Clause Paramount that contains a shipper's-risk clause. Clause 15 states in relevant part:

> [(2)] Goods . . . may be carried on deck . . . . All such Goods . . . shall be deemed to be within the definition of goods for the purpose of the Hague Rules and shall be carried subject to these Rules.
> (3) Notwithstanding Clause 15(2), in the case of Goods which are stated on the face hereof as being carried on deck and which are so carried the Hague Rules shall not apply and the Carrier shall be under no liability whatsoever for loss, damage or delay, howsoever arising. *Columbia Machine*, 2007 WL 5173280, at *3; *see also e.g. Heli-Lift Ltd. v. M/V OOCL FAITH*, CV 00-13191 GAF(CWX), 2001 WL 34084370, at *2, 2003 A.M.C. 30, 33 (C.D. Cal. Dec. 11, 2001) (same Clause Paramount language found successful at incorporating COGSA into BOL for on-deck carriage).

Subsection 2 of this clause, acting in tandem with a proclamation of on-deck carriage elsewhere in the BOL, clearly incorporates the Hague Rules into the BOL for on-deck carriage because it negates the exclusionary effect of Hague Rules' counterpart to COGSA Section 1(c) by stating that deck-loaded goods will be within the definition of "goods" governed by the Hague Rules. CC's Clause fails to do this. Also, unlike the clause in *Pannell*, CC's Clause fails to negate explicitly Section 1(c). Subsection 13 of Clause 15, in the *Columbia Machine* BOL, is a shipper's-risk clause that attempts to supersede subsection 2 in the event that it is

found enforceable. By stating the shipper's-risk clause in a separate subsection from the incorporation subsection, Clause 15 avoids the ambiguity present in CC's Clause Paramount.

Far from incorporating COGSA "unambiguously," CC's Clause Paramount does not incorporate the COGSA for on-deck carriage because it fails to address the exclusionary effect of Section 1(c) and is otherwise insufficiently clear. Instead, as discussed *infra*, the Harter Act applies *ex proprio vigore*.

A BOL's drafter has the burden of being clear and express. CC easily could have drafted a Clause as clear as the successful clause in *Columbia Machine* or the clause in *Pannell*. But it did not. Why? One can only guess at the motive for not being transparent about the application of COGSA and its $500 limitation when charging $55,000 to carry a $1.8 million yacht.

## C. THE SUPERSEDED BOOKING NOTE DOES NOT HELP TO INCORPORATE COGSA

PAE anticipates that CC will argue, as they did below, that the Booking Note ("BN") CC used to book the yacht's carriage is evidence of the parties' intent to incorporate COGSA. The Booking Note, Clause 13, Special Terms, states:

> CONLINE BOOKING NOTE AND B/L TERMS & CONDITIONS EDITION 2000 TO APPLY, MERCHANT DECLARES NO VALUE AND USCOGSA PACKAGE LIMITATION APPLIES. C.R. No. 22-7, ER 0071.

This BN clause does not help overcome CC's ineffective Clause Paramount.

First, immediately below the BN clause, the BN states it will be "superseded by the terms of the bill of lading." *Id.* The BN does not state that the BOL terms

are "in addition to" or similar; it says "superseded." These are CC's words, not PAE's. Thus, it was the parties' intent that solely the language in the BOL, not the BN, would govern once CC issued the BOL. CC cannot have it both ways.

Second, and consistent with the first point, the legal standard for incorporation is that a BOL's clause paramount must use language that is sufficiently clear—not that there must be notice of incorporation through vague statements made before contract formation.

Third, having to consider evidence of intent in itself evinces ambiguity. *See Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999) [W]hen the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself.") *opinion amended on denial of reh'g,* 203 F.3d 1175 (9th Cir. 2000). Because ambiguity is construed against the BOL's drafter, considering evidence of intent only demonstrates that the BOL is vague and failed to clearly incorporate COGSA.

Finally, the BN does not state COGSA will apply—only that its package limitation applies. This is significant because parties can incorporate specific provisions of COGSA without incorporating the entire Act. *See Watermill Exp., Inc. v. MV Ponce*, 506 F. Supp. 612, 614 (S.D.N.Y. 1981) (collecting cases where COGSA was only partially incorporated); *see*, *infra*, Part IV (B) herein. Thus, the clause, even if it were given some weight, only shows that the parties considered incorporating the package limitation without some or all of the other provisions of COGSA. Thus, BN Clause 13 is even more unclear than the BOL's Clause

Paramount regarding COGSA's incorporation. Why not just clearly state that COGSA and its $500 package limitation will govern the on-deck shipment?

In sum, the BN does not apply by its own terms or by the standard calling for express language, and it fails completely to support COGSA's incorporation.

## II.    IN THE UNITED STATES, THE HARTER ACT APPLIES TO THE BOL FOR CARRIAGE OF THE NORDHAVN

The District Court erred in finding that the Harter Act does not govern the Nordhavn shipment. C.R. No. 38, ER 0006-8. Under U.S. law, the Harter Act applies *ex proprio vigore* to the Nordhavn shipment.

### A.    BECAUSE CC'S BOL DOES NOT INCORPORATE COGSA FOR ON-DECK CARRIAGE, THE HARTER ACT APPLIES

Unlike COGSA, the Harter Act does not exclude from its regulation a BOL for on-deck carriage. Compare 46 U.S.C. § 30702 to 46 U.S.C. § 30701, Note, §1(c). Appreciating this distinction, courts have found that where a BOL fails to incorporate COGSA to govern on-deck shipment, the Harter Act applies *ex proprio vigore*.

In *Saudi Pearl*, the court found the BOL's clause paramount did not incorporate COGSA into the BOL for a shipment of poles carried on deck but not in containers. *Saudi Pearl Ins. Co., Ltd. v. M.V. Aditya Khanti*, 95 CIV. 2174 (JFK), 1997 WL 291834, at *3 (S.D.N.Y. June 2, 1997). Why? On its face the clause only incorporated COGSA for goods carried on deck stored in containers. *Id.* Because the BOL failed to incorporate COGSA and COGSA does not apply to BOLs for on-deck cargo *ex proprio vigore*, the court held that "the older Harter

- 21 -

Act controls." *Id.* For support, the court explained: "[D]eck cargo is governed by the pre-[COGSA] law, which in America included the Harter Act." *Id.*, at *4. (citation and internal quotation omitted); *see also Z.K. Marine, Inc. v. M/V Archigetis*, 776 F. Supp. 1549, 1553 (S.D. Fla. 1991) (court explained that but for COGSA's incorporation, the Harter Act would have applied to the on-deck yacht shipment) *clarified on denial of reconsideration sub nom. Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561 (S.D. Fla. 1992).

Similarly, in *Blanchard Lumber*, because the BOL did not incorporate COGSA into the BOL for the deck-loaded shipment of lumber, the court found that the Harter Act governed. *Blanchard Lumber Co. v. S. S. Anthony II*, 259 F.Supp. 857, 864-865 (S.D.N.Y 1966). First, acknowledging that while COGSA Section 12 states that COGSA does not supersede the Harter Act for the periods before loading and after discharge—and is silent about superseding or preserving the Harter Act for any other period, the court concluded:

> In the absence of an affirmative legislative expression to the contrary . . . I see no reason for holding that the Harter Act is superseded in all cases by [COGSA] as to deck cargo in the 'tackle to tackle' period. *Id.* at 865.

Second, the court emphasized that the Harter Act applied because applying Canadian law, as the carrier urged based on the BOL's clause paramount, would "exculpate [the carrier] from liability for negligence." *Id.* at 860-861, 864-865. As argued *infra*, CC's BOL seeks to exculpate CC and SSA from all liability for damage to deck cargo. *See, infra*, Part IV(A)-(B); C.R. No. 22-7, ER 0074. Therefore, just like in *Blanchard Lumber*, in the instant case "the Harter Act . . .

- 22 -

must be applied in order that the strong American policy of protection to shippers, evidenced by both the Harter Act and [COGSA], may be maintained." 259 F.Supp. at 865.

As with the shipments in *Saudi Pearl* and *Blanchard Lumber*, the Nordhavn was carried on-deck pursuant to a BOL for on-deck carriage and the BOL governing the shipment did not clearly incorporate COGSA. So here, as in those cases, in the absence of COGSA's incorporation, the Harter Act applies to the deck-loaded shipment.

### B. THE HARTER ACT APPLIES TO CARRIAGE BETWEEN FOREIGN AND DOMESTIC PORTS

Harter Act Section 30702(a) plainly states: "Except as otherwise provided, this chapter applies to a carrier engaged in the carriage of goods to or from any port in the United States." 46 U.S.C. § 30702(a); *see Blanchard Lumber*, 259 F. Supp. 857, 865 ("The Harter Act applies to [shipments] in any vessel from foreign ports to United States ports.") (citing *Knott v. Botany Mills*, 179 U.S. 69, 74-76 (1900) (holding that all sections of the Harter Act apply to all voyages to or from U.S. ports, domestic and foreign)); *see Z.K. Marine*, 776 F.Supp. 1549, 1553 ("The Harter Act applies to all voyages where COGSA does not apply, including those between American and foreign ports . . . ."). Section 30702(b) excludes from the Harter Act's regulation the carriage of live animals—explaining the presence of the phrase "[e]xcept as otherwise provided" in Section 30702(a). 46 U.S.C. § 30702(b). Neither the Harter Act nor COGSA contain a statement that excludes

any other type of carriage from the Harter Act's governance. 46 U.S.C. §§ 30701-30707; 46 U.S.C. 30701, Note, §§ 1-16.

The only place COGSA mentions the Harter Act is in Section 12, which specifically preserves the Harter Act for pre-loading and post-discharge periods, but is otherwise silent about superseding or preserving the Harter Act for any other period:

> Nothing in [COGSA] shall be construed as superseding any part of [the Harter Act] or any other law which would be applicable in the absence of [COGSA], insofar as they relate to the duties, responsibilities, and liabilities of the ship or carrier prior to the time when the goods are loaded on or after the time they are discharged from the ship. *See* 46 U.S.C. 30701, Note, § 12.

Furthermore, with regard to COGSA's scope, COGSA Section 13 provides: "[COGSA] shall apply to all contracts for carriage of goods by sea to or from ports of the United States in foreign trade." 46 U.S.C. 30701, Note, § 13. Adding, COGSA does not apply

> [t]o contracts for carriage of goods by sea between any port[s] of the United States . . . [p]rovided, however, [t]hat any bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea between such ports, containing an express statement that it shall be subject to the provisions of [COGSA] *Id.*

In *North River*, citing exclusively to COGSA in general and apparently without performing any statutory construction, the Ninth Circuit announced:

> To the extent that the Harter Act governed international trade leaving from or entering American ports, it was superseded in 1936 by the Carriage of Goods by Sea Act, 46 U.S.C. s 1300, et seq. (1936). The Harter Act

- 24 -

therefore only governs domestic trade. *N. River Ins. Co. v. Fed Sea/Fed Pac Line*, 647 F.2d 985, 987 (9th Cir. 1981).

This Court should clarify and distinguish this *dictum* from *North River*. First, in *North River*, the court held that COGSA applied because the BOL in that case incorporated it. *Id.* That holding is why COGSA governed—not because of the *dictum* regarding the Harter Act.

Second, the above-quoted COGSA sections do not state that the Harter Act will only govern domestic trade or that the Harter Act is superseded for international trade when COGSA does not apply. On the contrary, COGSA specifically preserves the Harter Act for pre-loading and post-discharge periods and simply states that COGSA "shall apply" to international sea carriage. While as the latter-enacted Act COGSA supersedes the Harter Act for international carriage *when it applies*, it does not follow that COGSA renders the Harter Act inapplicable to international carriage *when COGSA does not apply*.[7]

In contrast to *North River*'s announcement limiting the Harter Act's domain, courts considering the issue have held that the Harter Act applies to BOL's for international, on-deck carriage when COGSA does not apply. This is evidenced by the, above-examined decisions: *Blanchard Lumber* (shipment from Canada to U.S.), *Saudi Pearl* (U.S. to Saudi Arabia), and the reasoning in *Z.K. Marine* (Taiwan to U.S.). Additionally, in *Columbia Machine*, a case about on-deck

---

[7]     Moreover, as discussed *infra*, when COGSA *is incorporated* into a BOL it lacks "statute rank." Under such circumstances, BOL terms inconsistent with COGSA are governed by the Harter Act. *See*, *infra*, Part IV(B) herein.

shipment from Washington to New Zealand, the Ninth Circuit district court stated that "The Harter Act . . . applies in the absence of COGSA . . . ." *Columbia Machine*, 2007 WL 5173280, at *1, 8 n.7.

Also declining to follow the *dicta* in *North River*, Ninth Circuit district courts have held that **the Harter Act applies to international carriage** where damage occurred outside the tackle-to-tackle period, to which—as with on-deck carriage—the Harter Act applies *ex proprio vigore*. *See Capital Partners Int'l Ventures, Inc. v. Danzas Corp.*, 309 F. Supp. 2d 1138, 1144 (N.D. Cal. 2004) (explicitly declining to follow *North River* and holding that the Harter Act governed during the pre-loading/post-discharge period for a shipment from Belgium to California); *see Cigna Ins. Asia Pac. Ltd. v. Expeditors Int'l of Washington, Inc.*, CV 00-1054 AHM (EX), 2001 WL 34037360, at *5, 2002 A.M.C. 1085, 1092 (C.D. Cal. Aug. 22, 2001); *see also Thiti Lert Watana Co., Ltd. v. Minagratex Corp.*, 105 F. Supp. 2d 1077, 1082-83 (N.D. Cal. 2000) (Although COGSA was properly incorporated, the court acknowledged: "When shipments are not covered by COGSA, they are covered by the Harter Act"). *Fed. Ins. Co. v. Union Pac. R. Co.*, 09-55028, 2011 WL 2711314, at *1-2 (9th Cir. 2011) (although COGSA was incorporated into a BOL for international carriage, the Court stated: "As a general rule, the Harter Act, rather than COGSA, applies to goods before delivery to and after discharge from a vessel.").

Most significantly perhaps, the Ninth Circuit district courts are correct in declining to follow *North River*'s anti-Harter Act stance because that decision's statutory interpretation conflicts with longstanding rules of statutory construction

- 26 -

regarding conflicts between federal acts set forth by the United States Supreme Court:

> **In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable. . . .** Where there is no clear intention otherwise, **a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment** . . . . [W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective. **When there are two acts upon the same subject, the rule is to give effect to both if possible . . . . The intention of the legislature to repeal must be clear and manifest.** *Morton v. Mancari*, 417 U.S. 535, 550-551(1974) (internal citations omitted)(emphasis added); *see Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533 (1995) (finding no conflict between COGSA and the FAA and explaining: "When two statutes are capable of co-existence . . . it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.") (internal citations omitted).

COGSA and the Harter Act, by their own terms, are "two acts upon the same subject" vis-à-vis international ocean shipments from or to United States ports—except with regard to on-deck carriage and period of application. But, since COGSA does not explicitly supersede the Harter Act, under *Morton*, it is the "duty of the courts" to "give effect to both" COGSA and the Harter Act. Furthermore, in its governance of the pre-loading/post-discharge period and on-deck carriage, the Harter Act is a "specific statute" that should not be "nullified" by the subsequently-enacted COGSA, which specifically excepts on-deck carriage, per BOL stating on-deck carriage, from its governance.

- 27 -

Moreover, "repeal by implication" is only permissible where two acts are "irreconcilable." 417 U.S. at 550. Ninth Circuit district courts sensibly have been able to reconcile COGSA and the Harter Act, finding that the latter applies for damage occurring the tackle-to-tackle period in international carriage. Likewise, the *Blanchard Lumber* and *Saudi Pearl* courts easily reconciled the two Acts by holding that the Harter Act governs on-deck shipments in the absence of COGSA's clear incorporation.

Additionally, the Harter Act's application to on-deck cargo in such cases furthers the legislative intent recognized by the Ninth Circuit: "Congress passed the Harter Act and COGSA to counteract the persistent efforts of carriers, who are the drafters of ocean bills of lading, to insert all embracing exceptions to liability." *Tessler Bros. (B.C.) Ltd. v. Italpacific Line*, 494 F.2d 438, 444 (9th Cir. 1974) (cited in *North River*, 647 F.2d 985, 987, with the *North River* court adding, "COGSA was passed to further and to strengthen the purposes served by the Harter Act."). Upholding this policy specifically against exculpatory clauses as explained *infra*, is especially relevant to the instant case.

Essentially, the *Blanchard Lumber* court's statutory construction is a proper application of the above-quoted Supreme Court construction-dictates: "In the absence of an affirmative legislative expression to the contrary, [there is] no reason for holding that the Harter Act is superseded in all cases by [COGSA] as to deck cargo in the 'tackle to tackle' period." *Blanchard Lumber Co. v. S. S. Anthony II*, 259 F.Supp. 857, 865 (S.D.N.Y 1966). Therefore, in the U.S., notwithstanding its

international nature, the on-deck shipment of the Nordhavn is clearly governed by the Harter Act.

## III.    BELGIAN LAW WILL APPLY IN A COURT IN BELGIUM.

Since the Clause Paramount does not incorporate COGSA to govern the Nordhavn's shipment, what law will a Belgian court apply?[8] CC's Belgian law answers with, "[A] Belgian court will apply the law of the contract." C.R. No. 22-4, ER 0078. What provision of the BOL, the contract, will answer the question?

### A.    THE BOL DOES NOT INCORPORATE ANY U.S. LAW AND MAKES BELGIAN LAW APPLICABLE IN BELGIUM.

The BOL's second page contains a lengthy choice-of-law clause, "Clause 3," that states in relevant part:

> 3. Liability for Carriage Between Port of Loading and Discharge.
> [The Hague-Visby Rules] . . . as enacted in the country of shipment shall apply to this contract. When the Hague-Visby Rules are not enacted in the country of shipment, the corresponding legislation of the country of destination shall apply . . . . C.R. No. 22-7, ER 0074.

Per Clause 3, the "country of shipment" for the Nordhavn carriage was Taiwan. *Id.* But Taiwan has not enacted any version of the Hague Rules. *See Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1565 (S.D. Fla. 1992). Then, under Clause 3, the "country of destination" is the U.S., which suggests that COGSA should

---

[8]      If this Court affirms the District Court's dismissal, a Belgian court will almost certainly rely on the District Court's finding that the Clause Paramount incorporated COGSA for on-deck carriage.

apply.[9] Yet, Clause 3 fails to incorporate COGSA for same reasons as the Clause Paramount: it does not expressly state that the Hague-Visby Rules will apply to on-deck carriage and fails to counteract the exclusionary effect of COGSA Section 1(c) or its Hague-Visby Rules' counterpart. *See* C.R. No. 22-4, ER 0078 (explaining that the Hague-Visby rules have a provision analogous to COGSA Section 1(c)).

Because both the Clause Paramount and Clause 3 fail to incorporate COGSA for on-deck shipment, and those clauses do *not* reference any other U.S. law—including the Harter Act—a Belgian court has no grounds to apply any U.S. law based on the contract between PAE and CC. Instead, under the plain meaning of the BOL's Clause 4, a Belgian court must apply Belgian law:

> 4. Law and Jurisdiction.
> Disputes arising out of or in connection with this [BOL] shall be exclusively determined by the courts **and in accordance with the law of the place where the Carrier has his principle place of business, as state on Page 1, except as provided elsewhere herein.** C.R. No. 22-7, ER 0074.

CC's, "principle place of business" was held by the District Court to be Antwerp, Belgium. C.R. No. 38, ER 0003 n.2.[10] The conditional phrase "except as provided elsewhere herein" is inapposite because no other BOL clause successfully

---

[9]    COGSA is the U.S. version of the Hague Rules. *Sunkist Growers, Inc. v. Adelaide Shipping Lines, Ltd.,* 603 F.2d 1327, 1333 (9th Cir.1979).

[10]    Adding to the confusion and sloppiness of the BOL, CC does not state its place of business in the box titled "Carrier's name/principal place of business." Instead, "ANTWERP" appears in a phrase in another box below. C.R. No. 22-7, ER 0073.

incorporates any law. Thus, under Clause 4, a Belgian court would be obligated to apply Belgian law.

Moreover, a Belgian court will not apply Belgian's version of COGSA, the Hague-Visby Rules. As CC's expert explains, Belgian's Hague-Visby Rules, "art. 91": (1) only apply to BOL's issued for carriage from or to Belgian ports, and (2) do not apply of their own force to goods carried on deck. *See* C.R. No. 22-4, ER 0078.

## B. CC'S OFFERED STIPULATION DOES NOT MAKE U.S. LAW APPLICABLE IN BELGIUM

In ordering the dismissal, the District Court relied on the fact that CC and SSA were willing to stipulate to the application of COGSA. *See* C.R. No. 38, ER 0007 n.8. This too was in error.

PAE and RLI specifically argue against the application of COGSA and for application of the Harter Act. It is illogical, highly inequitable and unprecedented to force PAE and RLI to stipulate to a position which they oppose in order to clarify in favor of CC an ambiguity CC created.

Furthermore, if CC and SSA argue that they are willing to stipulate to the application of all U.S. law, including the Harter Act, it would still be equally inequitable and unprecedented to force PAE and RLI to accept such a stipulation just so CC and SSA can enforce the forum selection clause. Such a forced stipulation would be especially unfair since the CC's BOL and Booking Note do not reference or seek to incorporate the Harter Act or U.S. law (besides COGSA).

The record on appeal is set; no stipulations regarding choice-of-law were made prior to the District Court's decision and cannot be forced now. Allowing carriers to force stipulations after suit is filed regarding choice-of-law that ignore the terms of *their* bills of lading in order to let *them* enforce a forum selection clause is not only inequitable but also in direct conflict with the purposes of COGSA, the Harter Act and *Sky Reefer*. Such boundless power defies basic principles of contract law and cannot be given to carriers. The issues here must be decided by the terms of the BOL *that CC drafted* and applicable law.

Finally, unilateral, self-serving stipulations that jeopardize an opposing party's interest are not allowed. *See United States v. Bates*, 146 Fed.Appx. 795, 796, 798-799 (6th Cir. 2005) (the Sixth Circuit Court held that District Court erred by accepting Defendant's unilateral stipulation regarding his financial problems in order to limit the admission of the government's evidence against him); *see Vector Pipeline, L.P. v. 68.55 Acres of Land*, 157 F.Supp.2d 949 (N.D. Ill. 2001) (natural gas pipeline builder, who prevailed in federal condemnation action, could not unilaterally stipulate to taking of lesser rights than it had won, for purpose of determining land owner's just compensation); *see also St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 58 S.Ct. 586, 592–593 (1938) (a plaintiff, following removal, cannot destroy federal jurisdiction simply by unilaterally stipulating that the amount in controversy is below the requisite amount).

## IV. UNDER *SKY REEFER*, THE BOL'S FORUM SELECTION CLAUSE IS UNENFORCEABLE

In *Sky Reefer*, the Supreme Court set forth the rule regarding the enforceability of forum-selection clauses in maritime cases:

> **Were there no subsequent opportunity for review** and were we persuaded that the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies ..., we would have little hesitation in condemning the agreement as against *public policy*. *Sky Reefer*, 515 U.S. 528, 540 (internal citations omitted) (emphasis added);[11] *see Fireman's Fund Ins. Co. v. M.V. DSR Atlantic*, 131 F.3d 1336, 1339 (9th Cir. 1998) ("[T]he *Sky Reefer* holding applies equally to forum selection clauses and arbitration clauses.")

This rule applies here because the District Court dismissed the case to a Belgian court—and thus there is no subsequent opportunity for review within the meaning of *Sky Reefer*. Under *Sky Reefer*, CC's forum selection clause is unenforceable because (1) unlike a U.S. court, a Belgian court will enforce the BOL's exculpatory clauses; and (2) even if, *in arguendo*, CC's BOL properly incorporated COGSA, BOL provisions inconsistent with COGSA—such as the exculpatory clauses—are still enforceable in Belgium—but not in the U.S. under the Harter Act.

---

[11]     For the language of this rule, the Court quoted from *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n. 19 (1985). Citing to the same *Mitsubishi Motors* footnote, the *Sky Reefer* Court announced: "The relevant question, therefore, is whether the substantive law to be applied will reduce the carrier's obligations to the cargo owner below what COGSA guarantees." *Sky Reefer*, 515 U.S. at 539. This is another characterization of the same rule.

**A.** **THE FORUM SELECTION CLAUSE IS UNENFORCEABLE BECAUSE,** *IN THE ABSENCE OF COGSA'S INCORPORATION,* **A BELGIAN COURT—UNLIKE A U.S. COURT—WILL ENFORCE THE BOL'S EXCULPATORY CLAUSES**

Applying the *Sky Reefer* rule, courts have refused to enforce forum-selection clauses where a foreign forum applying foreign law could *potentially* bar recovery otherwise available in the United States.

For example, in *Majestic Electronics*, the BOL contained an exculpatory clause stating that the carrier "shall not be liable" so long as goods were delivered with "seal intact." *Majestic Electronics, Inc. v. M/V JIN HE*, CV98-6750GHK(CWX), 1999 WL 694186, at *1, 1999 A.M.C. 1700, 1701 (C.D. Cal. May 10, 1999). The court explained that under one U.S. court's interpretation of COGSA Section 3(8), such a clause would not shield the carrier from liability. *Id.* However, the parties' experts disagreed whether the clause would be enforceable under Chinese law. *Id.* In light of that disagreement, the court found that it could not "conclude that there is no conflict between [the exculpatory clause] and [COGSA], or that Chinese courts will not give literal effect to [the clause]. *Id.* Believing that the plaintiff produced "sufficient evidence that Chinese courts **might** apply [the exculpatory clause]," the court refused to enforce the forum-selection clause. *Id.*, at *2 (emphasis added); *see Nippon Fire & Marine Ins. Co. v. M/V Spring Wave*, 92 F. Supp. 2d 574, 577 (E.D. La. 2000) ("Being unable to predict the Japanese court's interpretation of Japan's COGSA and considering the conflicting opinions by Japanese legal experts," with regard to the enforcement of exculpation clauses, the Court concluded "that **a real risk** exist[ed] that a Japanese

Court" would enforce the clauses. And because under COGSA Section 3(8) the clauses would be void, the court, pursuant to *Sky Reefer,* refused to send the case to Japan) (emphasis added); *see Central National–Gottesman, Inc. v. M.V. "Gertrude Oldendorff,"* 204 F.Supp.2d 675 (S.D.N.Y.2002); *see Kanematsu USA, Inc. v. M/V Ocean Sunrise*, CIV.A. 01-1702, 2003 WL 21241790 (E.D. La. May 23, 2003).

CC's BOL contains an exculpatory clause at the end of Clause 3(a): "The carrier shall in no case be responsible for loss of or damage to cargo arising prior to loading, after discharge, or with respect to deck cargo or live animals." C.R. No. 22-7, ER 0074. Similarly, the BOL's Clause 15(a) relieves the carrier's agents of all liability. *Id.* Enforcing the plain terms of these exculpatory clauses would relieve CC and SSA of all liability. But as explained, in the U.S., the Harter Act applies *ex proprio vigore* and would render the exculpatory clauses unenforceable because they seek to absolve CC and SSA of all liability, even for negligent acts. *See* 46 U.S.C. 30704; *see Knott v. Botany Mills*, 179 U.S. 69, 77 (1900); *see Isthmian S. S. Co. v. California Spray-Chem. Corp.*, 300 F.2d 41, 45-47 (9th Cir. 1962); *see Caterpillar Overseas, S.A. v. S.S. Expeditor,* 318 F.2d 720, 722–724 (2nd Cir.1963) (holding that an exculpatory clause limiting the carrier's liability to discharge was void under the Harter Act and its legislative purpose of eliminating the historically superior bargaining position of carriers via the insertion of exculpatory clauses); *see Federal Insurance Company v. Transconex, Inc.*, 430 F.Supp. 290, 295 (D.P.R. 1976).

A Belgian court, by contrast, will enforce the BOL's exculpatory clauses. As explained *supra*, the BOL does not incorporate U.S. law and Belgian's Hague-

Visby Rules do not apply. Thus, no law prevents a Belgian court from enforcing the clear exculpatory terms.[12] In his declaration, CC's expert explains that *because U.S. law applies* a Belgian court would not enforce the exculpatory clauses unless they were enforceable under U.S. law. *See* C.R. No. 22-4, ER 0079 (¶¶10-11); *accord* C.R. No. 33-2, ER 0029(¶8), ER 0031-32 (¶¶12-13). CC's expert's declarations are otherwise silent regarding the enforceability of the exculpatory clauses and the clause's validity under *Belgian law where the Hague-Visby Rules do not apply*. *See* C.R. No. 22-4, ER 0075-0080; C.R. No. 33-2, ER 0027-34.

On the other hand, PAE's expert, Mr. Marcon, states that despite COGSA's possible incorporation, "I cannot exclude . . . [that] a Belgian court could apply [Clause 3(a)]. This could result into the carrier being not liable at all." C.R. No. 32-1, ER 0059.  He explains that under Belgian law such exculpatory clauses are enforceable:

---

[12]      As discussed *supra*, CC and SSA cannot be allowed to unilaterally force PAE and RLI to stipulate to the application of a particular statute to avoid law that would render CC's forum selection clause unenforceable. For the same reasons, CC and SSA cannot be allowed to force a stipulation, or concede, that the exculpatory clauses in CC's BOL are unenforceable in order to ensure that the forum selection clause is enforceable. It would be unprecedented and overwhelmingly prejudicial to allow CC and SSA to choose what clauses in *their* BOL *they* are willing to stipulate-away in order to protect *their* forum selection clause. Such in-litigation editing and plucking of a BOL would provide carriers with unlimited power to finagle their way out of liability, choose a forum of their liking, and circumnavigate COGSA, the Harter Act and *Sky Reefer*. As the drafter of the BOL, CC must be legally bound to it, including its ambiguities.

> Whereas under Belgian law the claim is not governed by any mandatory law, a Belgian court can easily accept that all the clauses of the [BOL] fully apply. . . . Under Belgian law a party to a contract can limit/restrict its liability to a large extent . . . . I consequently believe that a Belgian judge seized with the claim, will consider [Clause 3(a) and the BOL's other exculpatory clauses], limiting the carrier's liability substantially, as valid. C.R. No. 32-1, ER 0060-61.

He likewise concludes that Clause 15(a) will be enforced. *See* C.R. No. 32-1, ER 0061-62.

In sum, a U.S. court would certainly void the exculpatory clauses under the Harter Act, while a Belgian court would enforce the clauses under Belgian law. This means that here, as in *Majestic Electronics* and *Nippon Fire*, "the choice-of-forum and choice-of-law clauses" operate "in tandem as a . . . waiver of a party's right" under *Sky Reefer*. Moreover, because the validity of Mr. Marcon's conclusion regarding the exculpatory clauses' enforceability under Belgian law is unopposed, it is more definitive than the *Majestic Electronics* court's opinion that the exculpatory clause there "might" have been enforced by the Chinese court and the *Nippon Fire* court's concern that there was a "real risk" of such enforcement in Japan. Therefore, just like in those cases, here, the BOL's forum-selection clause is unenforceable under *Sky Reefer*.[13]

---

[13] There is no reason that the *Sky Reefer* rule (either characterization of it) cannot apply where the Harter Act governs. In *Knott*, the Court refused to enforce English law because it allowed for the enforcement of an exculpatory clause in the BOL that was void under the Harter Act's equivalent of COGSA Section 3(8). *Knott*, 179 U.S. at 71, 77 In this, *Knott* is consistent with the enforceability rules set forth in *Sky Reefer* as applied in *Majestic Electronics*, *Nippon Fire*: these courts refused to enforce forum selection clauses based on foreign fora's likely

- 37 -

The District Court concluded that CC's forum selection clause was enforceable by applying a less stringent standard than required by *Sky Reefer*. The District Court held that the ultimate test was "[w]hether PAE can walk into a Belgian court and advance, with some meaningful hope of success, the same claims and arguments it would advance in this Court." C.R. No. 38, ER 0013. The proper test under *Sky Reefer* is "whether the substantive law to be applied will reduce the carrier's obligations to the cargo owner below" U.S. substantive law, or result in a "waiver of a party's right to pursue statutory remedies." *See Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540 (1995).

The *Majestic Electronics* and *Nippon Fire* courts properly understood that under *Sky Reefer*, the "real risk" that an exculpatory clause "might" be enforced in a foreign forum but not in a domestic one was sufficient to render a forum selection clause unenforceable. The District Court's standard is not the equivalent of the *Sky Reefer* standard. It is not enough that PAE may be allowed to present arguments and possibly prevail in a Belgian court. Instead, a forum selection clause cannot be enforced if there is a risk that a cargo owner's substantive rights would be diminished in the foreign forum. Here, the fact that a Belgian court will enforce the exculpatory clauses or fail to apply the fair notice and opportunity

enforcement of exculpatory clauses. Additionally, *Knott* is specifically cited (as "Cf.") in *Sky Reefer* to support the announced forum-selection-clause enforceability-rule. *See Sky Reefer*, 515 U.S. at 540. Moreover, the Ninth Circuit has acknowledged, "Congress passed the Harter Act and COGSA to counteract the persistent efforts of carriers . . . to insert all embracing exceptions to liability." *Tessler Bros*, 494 F.2d at 444; *see N. River Ins. Co. v. Fed Sea/Fed Pac Line*, 647 F.2d 985, 987 (9th Cir. 1981)("COGSA was passed to further and to strengthen the purposes served by the Harter Act.")

doctrine (as discussed *infra*)—under a correct formulation of the *Sky Reefer* rule—renders the forum selection clause unenforceable. Therefore, the District Court erred in its characterization of the *Sky Reefer* rule and its application of it.

**B. *EVEN IF CC'S BOL INCORPORATED COGSA FOR THE NORDHAVN SHIPMENT*, THE FORUM SELECTION CLAUSE IS UNENFORCEABLE BECAUSE A BELGIAN COURT—UNLIKE A U.S. COURT—WILL ENFORCE THE BOL'S EXCULPATORY CLAUSES**

Even if, *in arguendo*, CC's BOL incorporates COGSA for the Nordhavn shipment, the forum-selection clause remains unenforceable. Under *Sky Reefer*, the forum selection clause is unenforceable because regardless of whether the BOL does or does not incorporate COGSA, a Belgian and U.S. court would come to opposite conclusions regarding the enforceability of the BOL's exculpatory clauses.

Where COGSA does not apply *ex proprio vigore*, as with on-deck BOLs for deck-loaded shipments, its successful incorporation will not render invalid BOL provisions inconsistent with COGSA. *See N. River Ins. Co. v. Fed Sea/Fed Pac Line*, 647 F.2d 985, 988-989 (9th Cir. 1981); *see Inst. of London Underwriters v. Sea-Land Serv., Inc.*, 881 F.2d 761, 766 (9th Cir. 1989) (finding that parties can contractually define that COGSA applies to on-deck goods notwithstanding COGSA Section 1(c) and holding "that terms inconsistent with COGSA, but which are otherwise valid contract terms, may be given force where COGSA is incorporated into a contract for foreign carriage to which it would not apply *ex proprio vigore.*"); *see Pannell v. United States Lines Co.*, 263 F.2d 497, 498 (2d

Cir. 1959)(the Second Circuit held that where COGSA was incorporated and did not apply *ex proprio vigore* to an on-deck shipment, effect should be given to the parties' contractual definition of package, even if that definition is contrary to that which would control if COGSA were applicable *ex proprio vigore*.)

Under this precedent, the exculpatory clauses in CC's BOL that would be *unenforceable* under COGSA Section 3(8) if COGSA applied *ex proprio vigore*,[14] will be *enforceable* where COGSA governs via incorporation—notwithstanding the exculpatory clauses inconsistency with COGSA. Yet, under these circumstances, the exculpatory clause must still fall pursuant to the Harter Act— which renders such clauses void.[15] 46 U.S.C. 30704; *see Knott v. Botany Mills*, 179 U.S. 69, 77 (1900); *see Isthmian S. S. Co. v. California Spray-Chem. Corp.*, 300 F.2d 41, 45-47 (9th Cir. 1962); *see Caterpillar Overseas, S.A. v. S.S. Expeditor*, 318 F.2d 720, 722–724 (2nd Cir.1963)

COGSA—when incorporated and not applying e*x proprio vigore*—does not have "statute rank." *United States v. M/V Marilena P*, 433 F.2d 164, 170 (4th Cir. 1969). It simply becomes another part of the contract. Conversly the Harter Act's

---

[14]     The plain language of COGSA section 1303(8) (now Section 3(8)) forbids enforcement of agreements to relieve carriers of liability for negligence. *Associated Metals & Minerals Corp. v. M/V Arktis Sky*, 978 F.2d 47, 50 (2d Cir. 1992); *see Hanover Ins. Co. v. Shulman Transp. Enters., Inc.,* 581 F.2d 268, 273–274 (1st Cir.1978); *see also Starrag v. Maersk, Inc.*, 486 F.3d 607, 614 (9th Cir. 2007) (distinguishing exculpatory clauses from package limitations, only the latter being valid under COGSA).

[15]     The District Court recognized that the exculpatory clauses might be enforceable as inconsistent terms—but it erroneously failed to conclude that the Harter Act would render those clauses unenforceable. *See* C.R. No. 38, ER 0010- 11, n.11.

statutory rank is unaffected by COGSA's failure to control certain BOL provisions. The Harter Act governs international on-deck shipments, and applies *ex proprio vigore* to the entire on-deck BOL. *See*, *supra*, Part II herein. This includes governance of any BOL clauses that COGSA—due to its incorporated status—fails to control.

In *Wemhoener Pressen*, a BOL incorporated COGSA's $500 package limitation to apply to subcontractors and govern beyond the tackle-to-tackle period. *Wemhoener Pressen v. Ceres Marine Terminals, Inc.,* 5 F.3d 734, 739 (4th Cir.1993). Because COGSA was incorporated for the post-discharge period, during which the incident at issue occurred, and because the Harter Act applied *ex proprio vigore*, the Fourth Circuit found that "the issues before the court must be decided with reference to the bill of lading and **both statutes**." *Id.* (emphasis added). Keeping true to its proclamation, the court proceeded to apply both statutes to the facts. *See id.* at 741-743.

As in *Wemhoener Pressen*, even if CC's BOL incorporated COGSA for on-deck shipment, to which it does not apply *ex proprio vigore*, the BOL—including the exculpatory clauses—"must be decided with reference to" both COGSA and the Harter Act. This is especially true since, unlike the $500 limitation in *Wemhoener Pressen*, CC's exculpatory clauses are not governed by COGSA at all as inconsistent contract terms—leaving their control solely within the domain of the Harter Act.

Furthermore, in *Uncle Ben's*, a BOL provision incorporated COGSA's one-year statute of limitation for the pre-loading period that COGSA does not govern

*ex proprio vigore*. *See Uncle Ben's Int'l Div. of Uncle Ben's, Inc. v. Hapag-Lloyd Aktiengesellschaft,* 855 F.2d 215, 217 (5th Cir.1988). The Fifth Circuit held, "If the parties extend the provisions of COGSA to the preloading phase, any inconsistency with the Harter Act must yield to the Harter Act." *Id.* If provisions incorporated from COGSA "must yield" to the Harter Act where the Harter Act, not COGSA, applies *ex proprio vigore*, then surely BOL provisions that are inconsistent with COGSA and thus outside its reach—such as CC's exculpatory clauses—must also be governed by the Harter Act.

Finally, in *North River*, the Ninth Circuit enforced a forum selection clause despite the fact that under the then-dominant rule of *Indussa Corp. v. S.S. RANBORG*, 377 F.2d 200 (2d Cir. 1967) foreign jurisdiction clauses were unenforceable in a situation when COGSA applied. *See N. River Ins. Co. v. Fed Sea/Fed Pac Line*, 647 F.2d 985, 988-989 (9th Cir. 1981). In order to reach that holding, the Court drew upon the distinction that the *Indussa* rule only invalidated forum selection clauses when COGSA applied by its own force and not where it was incorporated by contract for on-deck shipment. *Id.* For support, the Court "reject[ed] the view that COGSA preempts all contract terms when its sole force is by incorporation into a contract for foreign transportation." *Id.* at 989. The court concluded: "We hold, therefore, that BREMEN controls this case, in which COGSA is incorporated into a contract for foreign carriage, outside of the ex proprio vigore coverage of either the Harter Act or COGSA." *Id.*

In other words, the *North River* Court found that because the BOL incorporated COGSA to on-deck carriage and thus did not invalidate the

inconsistent contract clause at issue there (i.e. the forum selection clause), another underlying law applied (i.e. the rules set forth in *Bremen*). *North River*, 647 F.2d at 988-989. The Court's reasoning regarding the application of other precedent to BOL clauses not controlled by a contractually incorporated COGSA is proper and consistent with other sister Circuit Court decisions like *Uncle Ben's* and *Wemhoener Pressen*. However, as detailed *supra*, the *North River* Court misinterpreted the reach of the Harter Act—which also applies to international on-deck carriage pursuant to an on-deck BOL. *See*, *supra*, Part II herein. As the *Bremen* rule was the underlying law that governed the forum selection clause in *North River*. The Harter Act is the underlying law that governs the exculpatory clauses here. This is seamlessly consistent with Ninth Circuit's acknowledgment of legislative intent regarding the tandem goal of COGSA and the Harter Act:

> Congress passed the Harter Act and COGSA to counteract the persistent efforts of carriers, who are the drafters of ocean bills of lading, to insert all embracing exceptions to liability. *Tessler Bros. (B.C.) Ltd. v. Italpacific Line*, 494 F.2d 438, 444 (9th Cir. 1974); *see North River*, 647 F.2d at 987 ("COGSA was passed to further and to strengthen the purposes served by the Harter Act.").

Based on the above, in the United States, the Harter Act, applying *ex proprio vigore* to on-deck shipment, will render the exculpatory clauses unenforceable even if CC's BOL incorporated COGSA for on-deck shipment.

By contrast, a Belgian court cannot likewise rely on the Harter Act to invalidate the exculpatory clauses under these circumstances. *See*, *supra*, Part III herein. Instead, following the U.S. courts' interpretation of COGSA's non-

- 43 -

preemption of inconsistent BOL provisions, a Belgian court will enforce the BOL's exculpatory clauses. *See* C.R. No. 33-2, ER 0029 (CC's expert states, "[P]arties will have no problem whatsoever in establishing without any doubt that the clause 3(a) will not be applied, providing that statute and/or ***sufficient case law*** is provided . . . [I] am convinced that a Belgian Court would not apply [the exculpatory clause], *providing of course that sufficient evidence is brought of the fact that the clause is unenforceable **under COGSA***.") (emphasis added). This means that the differing results in a Belgian and U.S. court with respect to the enforceability of the BOL's exculpatory clauses is the same whether the CC's BOL does or does not incorporate COGSA for the Nordhavn shipment.

Because, unlike a U.S. court, a Belgian court will enforce the BOL's exculpatory clauses even if COGSA was incorporated for the Nordhavn shipment, the forum selection clause is unenforceable pursuant to *Sky Reefer* and by indistinguishable analogy to how *Sky Reefer* was applied in *Majestic Electronics* and *Nippon Fire*.[16]

### C. THE FORUM SELECTION CLAUSE IS UNENFORCEABLE BECAUSE A BELGIAN COURT—UNLIKE A U.S. COURT—WILL NOT APPLY THE FAIR NOTICE AND OPPORTUNITY DOCTRINE

Some courts have refused to enforce forum-selection clauses under *Sky Reefer* where the substantive doctrine of the foreign forum diminishes a plaintiff's

---

[16]     The *Majestic Electronics* and *Nippon Fire* courts refused to enforce a forum selection clause when a foreign court, unlike a U.S court, would enforce exculpatory clauses. *See*, *supra*, Part IV(A) herein. Analogously here, unlike a U.S. court, a Belgian court will enforce CC's exculpatory clauses—rendering CC's forum selection clause unenforceable under *Sky Reefer*.

rights below U.S. standards. For example, in *Heli-Lift*, the court refused to send a case to Germany where the plaintiff, seeking to avoid a $500 package limitation, would need to prove that the carrier *recklessly* loaded a helicopter on deck, while under U.S. law proof of *negligence* would suffice. *Heli-Lift Ltd. v. M/V OOCL FAITH*, CV 00-13191 GAF(CWX), 2001 WL 34084370, at *6-8 (C.D. Cal. Dec. 11, 2001).

Like in *Heli-Lift*, here, dismissing the case to the foreign forum will result in the application of foreign substantive law that will reduce the carrier's obligations to the cargo owner below U.S. standards. Specifically, a Belgian court will not properly apply the fair notice and opportunity doctrine.

Under the fair notice and opportunity doctrine:

> [A] carrier may limit its liability under COGSA only if the shipper is given a 'fair opportunity' to opt for a higher liability by paying a correspondingly greater charge. The carrier has the initial burden of . . . showing that it provided notice to the shipper that it could pay a higher rate and opt for higher liability. The carrier satisfies this initial burden **by legibly reciting the terms** of 46 U.S.C.App. § 1304(5) **or language to the same effect in the bill of lading**. *Vision Air Flight Serv., Inc. v. M/V Nat'l Pride*, 155 F.3d 1165, 1168 (9th Cir. 1998) (internal citations and quotations omitted) (emphasis added).

This doctrine applies regardless of whether the BOL is governed by COGSA, as set forth above, or by U.S. substantive law. *Fireman's Fund Ins. Companies v. Vessel "OOCL CHALLENGE"*, CV 90-6089 MRP, 1991 WL 343373, at *1 n.2 (C.D. Cal. Oct. 3, 1991); *see Union Pac. R.R. v. Burke*, 255 U.S. 317, 320-323 (1921); *see New York, N. H. & H. R. Co. v. Nothnagle*, 346 U.S. 128 (1953).

The BOL's "Additional Clause" states that "**If the U.S. COGSA applies**, and unless the nature and value of the cargo has been declared . . . the Carrier shall [not] . . . become liable for any loss . . . [above] USD 500 per package . . . ." C.R. No. 22-7, ER 0074 (emphasis added). CC's BOL does not incorporate COGSA. *See*, *supra*, Part I herein. Because the limitation is conditioned explicitly on COGSA's application, a U.S. Court cannot apply the $500 limitation. Similarly, a Belgian court will not apply the limitation pursuant to the plain language of the contract and U.S. law requiring express language to incorporate COGSA. That leaves only the exculpatory clauses to limit CC's and SSA's liability. And as explained *supra*, since COGSA was not incorporated—the two fora will reach different results regarding the enforceability of those clauses—rendering the forum selection clause unenforceable. *See*, *supra*, Part IV (A).

Even if CC's BOL somehow is deemed to incorporate COGSA, and a Belgian court, for some reason, finds the exculpatory clauses unenforceable, a Belgian court will enforce the $500 limitation, while a U.S. court will not. This difference in result exists because the fair notice and opportunity doctrine is unknown to Belgian law.

CC's expert states: "although the rule of 'fair opportunity' as it exists under [U.S.] law does not exist under Belgian law, a similar concept of opting out exists under Belgian law in [the Hague-Visby Rules]." C.R. No. 22-4, ER 0079. PAE's expert explains that unlike the fair notice and opportunity, Belgian's "opting out" doctrine differs significantly in that it does not require **written notice**. *See* C.R. No. 32-1, ER 0062. Clearly, this is not the same standard.

- 46 -

In contrast with a Belgian court and contrary to the District Court's findings, a U.S. court properly applying the fair notice doctrine, will find that CC's BOL does not provide PAE with a fair notice and opportunity to declare a higher value. Like the fair notice and opportunity clause in *Columbia Machine*, CC's Additional Clause starts with the qualifying language "If COGSA applies." *See Columbia Machine, Inc. v. DFDS Transp. (US), Inc.*, CV 06-1140 ABC PLAX, 2007 WL 5173280, at \*9 (C.D. Cal. Oct. 4, 2007) In *Columbia Machine*, the court found the such a qualifying language in a $500 limitation clause combined with the fact that the BOL at issue there proclaimed on-deck carriage in another clause was not enough to provide a fair notice and opportunity to the cargo owner. *Id.*, at \*9. If CC's BOL incorporated COGSA, it only did so ambiguously (if that is possible), based on the reasons set forth *supra* in Part I herein. Thus, despite the fact that unlike in *Columbia Machine*, here, COGSA may have been incorporated into the BOL for deck-loaded carriage, CC's BOL still does not have the required additional clarity with respect to notice and opportunity to declare a higher value. *See Columbia Machine, Inc. v. DFDS Transp. (US), Inc.*, CV 06-1140 ABC PLAX, 2007 WL 5173280, at \*5 (C.D. Cal. Oct. 4, 2007) (finding that a Clause Paramount must use "language that is sufficiently clear to guarantee" the extension of COGSA's $500 liability limitation to on-deck goods) (quoting *DeltamaxFreight Sys. v. M/V Aristotelis*, CV97-7845MMMAJWX, 1998 WL 1110395, at \*4 (C.D. Cal. Dec. 7, 1998) (citing *Inst. of London Underwriters*, 881 F.2d at 764 (citing *Grace Line, Inc. v. Todd Shipyards Corp.*, 500 F.2d 361, 371 (9th Cir. 1974) ( "[a

BOL], if clear and express, [extends] the $500 limitation on the amount of liability [of COGSA] . . . to stevedores.")))).

CC's BOL contains:

- four choice-of-law clauses;

- a forum-selection clause;

- a shipper's-risk sub-clause;

- multiple exculpatory clauses; and

- a separate package limitation clause, conditioned on the application of COGSA.

Most of these clauses are not particularly clear, and the Clause Paramount is patently ambiguous.

In order to give the required notice of the package limitation, the ambiguous Clause Paramount must trump the other choice-of-law clauses *and* be interpreted in combination with the "Additional Clause" to even begin to inform the cargo owner that the $500 limitation may apply. Truly appreciating which clause governs and why it governs requires understanding all of the law contained in this brief. A cargo owner like PAE cannot have such a burden placed on its shoulders without completely running afoul the goals of COGSA and the Harter Act to ensure that carriers do not limit their liability through ambiguity, including ambiguity related to fair notice and opportunity to declare a value for carriage.

A Belgian court, unfamiliar with the fair notice and opportunity doctrine, especially with the written notice requirement, will fail to recognize that **express written notice** must be given under the doctrine and enforce the $500 limitation.

Thus, a Belgian court will not apply the fair notice and opportunity doctrine or will do so improperly and reach a different result than a U.S. court with regard to the $500 limitation. Additionally, under *Majestic Electronics, Inc. v. M/V JIN HE*, CV98-6750GHK(CWX), 1999 WL 694186, at *1 (C.D. Cal. May 10, 1999). and *Nippon Fire & Marine Ins. Co. v. M/V Spring Wave*, 92 F. Supp. 2d 574, 577 (E.D. La. 2000) only a "risk" that the foreign court "might apply" a law that will jeopardize Appellants rights is necessary to render a forum selection clause unenforceable. Certainly, in view of conflicting expert testimony, as present in those cases as well, and the nuances of the fair notice and opportunity doctrine, at least a great risk exists that a Belgian court "might" misapply the doctrine.

Therefore, just as in *Heli-Lift*—which only dealt with the burden required to establish the $500 limit, as opposed to here, where the issue is whether the limit can apply at all—the case cannot be sent to Belgium because doing so would improperly diminish PAE and RLI's substantive rights under *Sky Reefer*.

## <u>CONCLUSION</u>

CC's BOL does not incorporate COGSA because it is not clear and express, meaning that a Belgian court will apply Belgian law to the dispute. Application of Belgian law will result in complete exoneration of CC and SSA, contrary to clear U.S. law. Even if the BOL incorporated COGSA, the Harter Act applies in the United States but not in Belgium. Because of that, notwithstanding COGSA's incorporation, a U.S. court—unlike a Belgian court—will invalidate CC's exculpatory clauses under the Harter Act. Additionally, even if a Belgian court chooses not to enforce the exculpatory clauses, unlike a U.S. court, it will

improperly apply the fair notice and opportunity doctrine. These discrepancies mean that enforcement of the forum selection clause will result in a waiver of PAE's and RLI's right to pursue statutory remedies. Therefore, under *Sky Reefer*, CC's forum selection clause is unenforceable.

This Court should not hesitate to enforce the burden of clarity placed on carriers—especially for choice-of-law and forum clauses. Carriers cannot be allowed to use unclear choice-of-law and forum clauses to limit or preclude their liability. Lenience in this regard does not fulfill the legislative purpose of COGSA and the Harter Act to prevent carriers from inserting exculpatory clauses into their bills of lading and limiting liability through ambiguity.

PAE and RLI respectfully request the Court to:

- hold that COGSA was not incorporated into the BOL and that the Harter act governs the BOL;

- vacate the District Court's order enforcing the forum selection clause; and,

- remand the case to the District Court for further proceedings consistent with this proceeding.

/s Stanley L. Gibson                    Date: September 30, 2011
SBN 047882
Gibson Robb & Lindh LLP
Attorneys for Plaintiffs-Appellants
Pacific Asian Enterprises, Corp.
and RLI Insurance, Co.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,990 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, Times New Roman, which is a font type that uses serifs, font size 14, using Microsoft Office Word 2003 SP2.

/s Stanley L. Gibson     Date: September 30, 2011
SBN 047882
Gibson Robb & Lindh LLP
Attorneys for Plaintiffs-Appellants
Pacific Asian Enterprises, Corp.
and RLI Insurance, Co.

## STATEMENT OF RELATED CASES

There are no related cases that counsel for appellants are aware of.


Respectfully submitted by:


/s Stanley L. Gibson                    Date: September 30, 2011
SBN 047882
Gibson Robb & Lindh LLP
Attorneys for Plaintiffs-Appellants
Pacific Asian Enterprises, Corp.
and RLI Insurance, Co.

- 52 -

# ADDENDUM

## TABLE OF CONTENTS TO ADDENDUM

Page Nos.

46 U.S.C.A. § 30701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A001

46 U.S.C.A. § 30702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A002

46 U.S.C.A. § 30703 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A003

46 U.S.C.A. § 30704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A004

46 U.S.C.A. § 30705 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A005

46 U.S.C.A. § 30706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A004

46 U.S.C.A. § 30707 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A007

COGSA § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A008

COGSA § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A008

COGSA § 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A009

COGSA § 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A010

COGSA § 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A012

COGSA § 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A012

COGSA § 7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A012

COGSA § 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A013

COGSA § 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A013

COGSA § 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A013

**<u>TABLE OF CONTENTS TO ADDENDUM</u>**
(Continued)

<u>Page Nos.</u>

COGSA § 11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A013

COGSA § 12. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A013

COGSA § 13. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A013

COGSA § 14. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A013

COGSA § 15. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A014

COGSA § 16. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A014

United States Code Annotated

Title 46. Shipping (Refs & Annos)

Subtitle III. Maritime Liability

Chapter 307. Liability of Water Carriers

46 U.S.C.A. § 30701

§ 30701. Definition

Effective: October 6, 2006
Currentness

In this chapter, the term "carrier" means the owner, manager, charterer, agent, or master of a vessel.

**Credits**
(Pub.L. 109-304, § 6(c), Oct. 6, 2006, 120 Stat. 1516.)

Notes of Decisions (2489)

Current through P.L. 112-28 approved 8-12-11

**End of Document**                    © 2011 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated

Title 46. Shipping (Refs & Annos)

Subtitle III. Maritime Liability

Chapter 307. Liability of Water Carriers

46 U.S.C.A. § 30702
Formerly cited as 46 App. USCA § 195

§ 30702. Application

Effective: October 6, 2006
Currentness

**(a) In general.**--Except as otherwise provided, this chapter applies to a carrier engaged in the carriage of goods to or from any port in the United States.

**(b) Live animals.**--Sections 30703 and 30704 of this title do not apply to the carriage of live animals.

**Credits**
(Pub.L. 109-304, § 6(c), Oct. 6, 2006, 120 Stat. 1516.)

Current through P.L. 112-28 approved 8-12-11

**End of Document**

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

A002

United States Code Annotated

Title 46. Shipping (Refs & Annos)

Subtitle III. Maritime Liability

Chapter 307. Liability of Water Carriers

46 U.S.C.A. § 30703
Formerly cited as 46 App. USCA §193

§ 30703. Bills of lading

Effective: October 6, 2006
Currentness

**(a) Issuance.**--On demand of a shipper, the carrier shall issue a bill of lading or shipping document.

**(b) Contents.**--The bill of lading or shipping document shall include a statement of--

 **(1)** the marks necessary to identify the goods;

 **(2)** the number of packages, or the quantity or weight, and whether it is carrier's or shipper's weight; and

 **(3)** the apparent condition of the goods.

**(c) Prima facie evidence of receipt.**--A bill of lading or shipping document issued under this section is prima facie evidence of receipt of the goods described.

**Credits**
(Pub.L. 109-304, § 6(c), Oct. 6, 2006, 120 Stat. 1516.)

Notes of Decisions (124)

Current through P.L. 112-28 approved 8-12-11

**End of Document** © 2011 Thomson Reuters. No claim to original U.S. Government Works.

A003

United States Code Annotated

Title 46. Shipping (Refs & Annos)

Subtitle III. Maritime Liability

Chapter 307. Liability of Water Carriers

46 U.S.C.A. § 30704
Formerly cited as 46 App. USCA §190

§ 30704. Loading, stowage, custody, care, and delivery

Effective: October 6, 2006
Currentness

A carrier may not insert in a bill of lading or shipping document a provision avoiding its liability for loss or damage arising from negligence or fault in loading, stowage, custody, care, or proper delivery. Any such provision is void.

**Credits**
(Pub.L. 109-304, § 6(c), Oct. 6, 2006, 120 Stat. 1516.)

Notes of Decisions (459)

Current through P.L. 112-28 approved 8-12-11

**End of Document**                                         © 2011 Thomson Reuters. No claim to original U.S. Government Works.

A004

United States Code Annotated

Title 46. Shipping (Refs & Annos)

Subtitle III. Maritime Liability

Chapter 307. Liability of Water Carriers

46 U.S.C.A. § 30705
Formerly cited as 46 App. USCA § 191

§ 30705. Seaworthiness

Effective: October 6, 2006
Currentness

**(a) Prohibition.**--A carrier may not insert in a bill of lading or shipping document a provision lessening or avoiding its obligation to exercise due diligence to--

  **(1)** make the vessel seaworthy; and

  **(2)** properly man, equip, and supply the vessel.

**(b) Voidness.**--A provision described in subsection (a) is void.

**Credits**
(Pub.L. 109-304, § 6(c), Oct. 6, 2006, 120 Stat. 1516.)


Notes of Decisions (33)

Current through P.L. 112-28 approved 8-12-11

**End of Document**                                        © 2011 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated

Title 46. Shipping (Refs & Annos)

Subtitle III. Maritime Liability

Chapter 307. Liability of Water Carriers

46 U.S.C.A. § 30706
Formerly cited as 46 App. USCA §192

§ 30706. Defenses

Effective: October 6, 2006
Currentness

**(a) Due diligence.**--If a carrier has exercised due diligence to make the vessel in all respects seaworthy and to properly man, equip, and supply the vessel, the carrier and the vessel are not liable for loss or damage arising from an error in the navigation or management of the vessel.

**(b) Other defenses.**--A carrier and the vessel are not liable for loss or damage arising from--

  **(1)** dangers of the sea or other navigable waters;

  **(2)** acts of God;

  **(3)** public enemies;

  **(4)** seizure under legal process;

  **(5)** inherent defect, quality, or vice of the goods;

  **(6)** insufficiency of package;

  **(7)** act or omission of the shipper or owner of the goods or their agent; or

  **(8)** saving or attempting to save life or property at sea, including a deviation in rendering such a service.

**Credits**
(Pub.L. 109-304, § 6(c), Oct. 6, 2006, 120 Stat. 1517.)

Notes of Decisions (714)

Current through P.L. 112-28 approved 8-12-11

**End of Document** © 2011 Thomson Reuters. No claim to original U.S. Government Works.

A006

United States Code Annotated

Title 46. Shipping (Refs & Annos)

Subtitle III. Maritime Liability

Chapter 307. Liability of Water Carriers

46 U.S.C.A. § 30707
Formerly cited as 46 App. USCA § 194

§ 30707. Criminal penalty

Effective: October 6, 2006
Currentness

(a) **In general.**--A carrier that violates this chapter shall be fined under title 18.

(b) **Lien.**--The amount of the fine and costs for the violation constitute a lien on the vessel engaged in the carriage. A civil action in rem to enforce the lien may be brought in the district court of the United States for any district in which the vessel is found.

(c) **Disposition of fine.**--Half of the fine shall go to the person injured by the violation and half to the United States Government.

**Credits**
(Pub.L. 109-304, § 6(c), Oct. 6, 2006, 120 Stat. 1517.)

Notes of Decisions (4)

Current through P.L. 112-28 approved 8-12-11

**End of Document**                                             © 2011 Thomson Reuters. No claim to original U.S. Government Works.

## Editor's and Revisor's Notes (76)

**HISTORICAL AND STATUTORY NOTES**

**Revision Notes and Legislative Reports**

**2006 Acts.**

| Revised Section | Source (U.S. Code) | Source (Statutes at Large) |
|---|---|---|
| | | |
| 30701# | (no source). | |

This chapter codifies the Act of February 13, 1893 (ch. 105, 27 Stat. 445) (commonly known as the Harter Act). Changes are made to simplify, clarify, and modernize the language and style, but the intent is that these changes should not result in changes in substance.

A definition of "carrier" is added based on language appearing in various provisions of the Harter Act. The definition avoids the need to repeat in various sections of this chapter the list of persons to whom the requirements and restrictions of this chapter apply, and it ensures that the list of persons is consistent in the chapter.

House Report No. 109-170 , see 2006 U.S. Code Cong. and Adm. News, p. 972.

**Carriage of Goods by Sea**

Act Apr. 16, 1936, c. 229, §§ 1 to 16, 49 Stat. 1207, as amended Proc. No. 2695, July 4, 1946, 11 F.R. 7517, 60 Stat. 1352; Aug. 6, 1981, Pub.L. 97-31, § 12(146), 95 Stat. 166, provided that:

**"Bills of lading subject to chapter [note]**

"Every bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade, shall have effect subject to the provisions of this chapter [this note].

**"Sec. 1. Definitions**

"When used in this chapter [this note]--

**"(a)** The term ' ' includes the owner or the charterer who enters into a contract of carriage with a shipper.

**"(b)** The term ' ' applies only to contracts of carriage covered by a bill of lading or any similar document of title, insofar as such document relates to the carriage of goods by sea, including any bill of lading or any similar document as aforesaid issued under or pursuant to a charter party from the moment at which such bill of lading or similar document of title regulates the relations between a carrier and a holder of the same.

**"(c)** The term ' ' includes goods, wares, merchandise, and articles of every kind whatsoever, except live animals and cargo which by the contract of carriage is stated as being carried on deck and is so carried.

**"(d)** The term ' ' means any vessel used for the carriage of goods by sea.

**"(e)** The term ' ' covers the period from the time when the goods are loaded on to the time when they are discharged from the ship.

**"Sec. 2. Duties and rights of carrier**

A008

"Subject to the provisions of section 1306 of this title [section 6 of this note], under every contract of carriage of goods by sea, the carrier in relation to the loading, handling, stowage, carriage, custody, care, and discharge of such goods, shall be subject to the responsibilities and liabilities and entitled to the rights and immunities set forth in sections 1303 and 1304 of this title [sections 3 and 4 of this note].

**"Sec. 3.    Responsibilities and liabilities of carrier and ship**

**"(1)  Seaworthiness**

"The carrier shall be bound, before and at the beginning of the voyage, to exercise due diligence to--

**"(a)**   Make the ship seaworthy;

**"(b)**   Properly man, equip, and supply the ship;

**"(c)**   Make the holds, refrigerating and cooling chambers, and all other parts of the ship in which goods are carried, fit and safe for their reception, carriage, and preservation.

**"(2)  Cargo**

"The carrier shall properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried.

**"(3)  Contents of bill**

"After receiving the goods into his charge the carrier, or the master or agent of the carrier, shall, on demand of the shipper, issue to the shipper a bill of lading showing among other things--

**"(a)**   The leading marks necessary for identification of the goods as the same are furnished in writing by the shipper before the loading of such goods starts, provided such marks are stamped or otherwise shown clearly upon the goods if uncovered, or on the cases or coverings in which such goods are contained, in such a manner as should ordinarily remain legible until the end of the voyage.

**"(b)**   Either the number of packages or pieces, or the quantity or weight, as the case may be, as furnished in writing by the shipper.

**"(c)**   The apparent order and condition of the goods:   *Provided* , That no carrier, master, or agent of the carrier, shall be bound to state or show in the bill of lading any marks, number, quantity, or weight which he has reasonable ground for suspecting not accurately to represent the goods actually received, or which he has had no reasonable means of checking.

**"(4)  Bill as prima facie evidence**

"Such a bill of lading shall be prima facie evidence of the receipt by the carrier of the goods as therein described in accordance with paragraphs (3)(a), (b), and (c), of this section:   *Provided* , That nothing in this chapter [this note] shall be construed as repealing or limiting the application of any part of chapter 801 of Title 49.

**"(5)  Guaranty of statements**

"The shipper shall be deemed to have guaranteed to the carrier the accuracy at the time of shipment of the marks, number, quantity, and weight, as furnished by him; and the shipper shall indemnify the carrier against all loss, damages, and expenses arising or resulting from inaccuracies in such particulars.   The right of the carrier to such indemnity shall in no way limit his responsibility and liability under the contract of carriage to any person other than the shipper.

**"(6)  Notice of loss or damage; limitation of actions**

"Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the carrier or his agent at the port of discharge before or at the time of the removal of the goods into the custody of the

A009

person entitled to delivery thereof under the contract of carriage, such removal shall be prima facie evidence of the delivery by the carrier of the goods as described in the bill of lading.   If the loss or damage is not apparent, the notice must be given within three days of the delivery.

"Said notice of loss or damage may be endorsed upon the receipt for the goods given by the person taking delivery thereof.

"The notice in writing need not be given if the state of the goods has at the time of their receipt been the subject of joint survey or inspection.

"In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered:   *Provided* , That if a notice of loss or damage, either apparent or concealed, is not given as provided for in this section, that fact shall not affect or prejudice the right of the shipper to bring suit within one year after the delivery of the goods or the date when the goods should have been delivered.

"In the case of any actual or apprehended loss or damage the carrier and the receiver shall give all reasonable facilities to each other for inspecting and tallying the goods.

## "(7)  'Shipped' bill of lading

"After the goods are loaded the bill of lading to be issued by the carrier, master, or agent of the carrier to the shipper shall, if the shipper so demands, be a 'shipped' bill of lading:   *Provided* , That if the shipper shall have previously taken up any document of title to such goods, he shall surrender the same as against the issue of the 'shipped' bill of lading, but at the option of the carrier such document of title may be noted at the port of shipment by the carrier, master, or agent with the name or names of the ship or ships upon which the goods have been shipped and the date or dates of shipment, and when so noted the same shall for the purpose of this section be deemed to constitute a 'shipped' bill of lading.

## "(8)  Limitation of liability for negligence

"Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this section, or lessening such liability otherwise than as provided in this chapter [this note], shall be null and void and of no effect.   A benefit of insurance in favor of the carrier, or similar clause, shall be deemed to be a clause relieving the carrier from liability.

[In par.  (4), "chapter 801 of title 49" substituted for "the Act of August 29, 1916, commonly known as the 'Pomerene Bills of Lading Act' [ 49 App. U.S.C.A. § 81 et seq. ]" on authority of Pub.L. 103-272, § 6(b), July 5, 1994, 108 Stat. 1378, the first section of which enacted subtitles II, III, and V to X of Tile 49, Transportation.]

## "Sec. 4.   Rights and immunities of carrier and ship

## "(1)  Unseaworthiness

"Neither the carrier nor the ship shall be liable for loss or damage arising or resulting from unseaworthiness unless caused by want of due diligence on the part of the carrier to make the ship seaworthy, and to secure that the ship is properly manned, equipped, and supplied, and to make the holds, refrigerating and cool chambers, and all other parts of the ship in which goods are carried fit and safe for their reception, carriage, and preservation in accordance with the provisions of paragraph (1) of section 1303 of this title [section 3 of this note].   Whenever loss or damage has resulted from unseaworthiness, the burden of proving the exercise of due diligence shall be on the carrier or other persons claiming exemption under this section.

## "(2)  Uncontrollable causes of loss

"Neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from--

A010

"**(a)** Act, neglect, or default of the master, mariner, pilot, or the servants of the carrier in the navigation or in the management of the ship;

"**(b)** Fire, unless caused by the actual fault or privity of the carrier;

"**(c)** Perils, dangers, and accidents of the sea or other navigable waters;

"**(d)** Act of God;

"**(e)** Act of war;

"**(f)** Act of public enemies;

"**(g)** Arrest or restraint of princes, rulers, or people, or seizure under legal process;

"**(h)** Quarantine restrictions;

"**(i)** Act or omission of the shipper or owner of the goods, his agent or representative;

"**(j)** Strikes or lockouts or stoppage or restraint of labor from whatever cause, whether partial or general: *Provided* , That nothing herein contained shall be construed to relieve a carrier from responsibility for the carrier's own acts;

"**(k)** Riots and civil commotions;

"**(l)** Saving or attempting to save life or property at sea;

"**(m)** Wastage in bulk or weight or any other loss or damage arising from inherent defect, quality, or vice of the goods;

"**(n)** Insufficiency of packing;

"**(o)** Insufficiency or inadequacy of marks;

"**(p)** Latent defects not discoverable by due diligence; and

"**(q)** Any other cause arising without the actual fault and privity of the carrier and without the fault or neglect of the agents or servants of the carrier, but the burden of proof shall be on the person claiming the benefit of this exception to show that neither the actual fault or privity of the carrier nor the fault or neglect of the agents or servants of the carrier contributed to the loss or damage.

"**(3) Freedom from negligence**

"The shipper shall not be responsible for loss or damage sustained by the carrier or the ship arising or resulting from any cause without the act, fault, or neglect of the shipper, his agents, or his servants.

"**(4) Deviations**

"Any deviation in saving or attempting to save life or property at sea, or any reasonable deviation shall not be deemed to be an infringement or breach of this chapter [this note] or of the contract of carriage, and the carrier shall not be liable for any loss or damage resulting therefrom: *Provided, however* , That if the deviation is for the purpose of loading or unloading cargo or passengers it shall, prima facie, be regarded as unreasonable.

"**(5) Amount of liability; valuation of cargo**

"Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other

A011

currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.   This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

"By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum amount than that mentioned in this paragraph may be fixed:   *Provided* , That such maximum shall not be less than the figure above named.   In no event shall the carrier be liable for more than the amount of damage actually sustained.

"Neither the carrier nor the ship shall be responsible in any event for loss or damage to or in connection with the transportation of the goods if the nature or value thereof has been knowingly and fraudulently misstated by the shipper in the bill of lading.

**"(6) Inflammable, explosive, or dangerous cargo**

"Goods of an inflammable, explosive, or dangerous nature to the shipment whereof the carrier, master or agent of the carrier, has not consented with knowledge of their nature and character, may at any time before discharge be landed at any place or destroyed or rendered innocuous by the carrier without compensation, and the shipper of such goods shall be liable for all damages and expenses directly or indirectly arising out of or resulting from such shipment.   If any such goods shipped with such knowledge and consent shall become a danger to the ship or cargo, they may in like manner be landed at any place, or destroyed or rendered innocuous by the carrier without liability on the part of the carrier except to general average, if any.

**"Sec. 5.   Surrender of rights; increase of liabilities; charter parties; general average**

"A carrier shall be at liberty to surrender in whole or in part all or any of his rights and immunities or to increase any of his responsibilities and liabilities under this chapter [this note], provided such surrender or increase shall be embodied in the bill of lading issued to the shipper.

"The provisions of this chapter [this note] shall not be applicable to charter parties; but if bills of lading are issued in the case of a ship under a charter party, they shall comply with the terms of this chapter [this note].   Nothing in this chapter [this note] shall be held to prevent the insertion in a bill of lading of any lawful provision regarding general average.

**"Sec. 6.   Special agreement as to particular goods**

"Notwithstanding the provisions of sections 1303 to 1305 of this title [sections 3 to 5 of this note], a carrier, master or agent of the carrier, and a shipper shall, in regard to any particular goods be at liberty to enter into any agreement in any terms as to the responsibility and liability of the carrier for such goods, and as to the rights and immunities of the carrier in respect of such goods, or his obligation as to seaworthiness (so far as the stipulation regarding seaworthiness is not contrary to public policy), or the care or diligence of his servants or agents in regard to the loading, handling, stowage, carriage, custody, care, and discharge of the goods carried by sea:   *Provided* , That in this case no bill of lading has been or shall be issued and that the terms agreed shall be embodied in a receipt which shall be a nonnegotiable document and shall be marked as such.

"Any agreement so entered into shall have full legal effect:   *Provided* , That this section shall not apply to ordinary commercial shipments made in the ordinary course of trade but only to other shipments where the character or condition of the property to be carried or the circumstances, terms, and conditions under which the carriage is to be performed are such as reasonably to justify a special agreement.

**"Sec. 7.   Agreement as to liability prior to loading or after discharge**

"Nothing contained in this chapter [this note] shall prevent a carrier or a shipper from entering into any agreement, stipulation, condition, reservation, or exemption as to the responsibility and liability of the carrier or the ship for the loss or damage to or in connection with the custody and care and handling of goods prior to the loading on and subsequent to the discharge from the ship on which the goods are carried by sea.

A012

**"Sec. 8.   Rights and liabilities under other provisions**

"The provisions of this chapter [this note] shall not affect the rights and obligations of the carrier under the provisions of the Shipping Act, 1916, or under the provisions of sections 175, 181 to 183, and 183b to 188 of this title or of any amendments thereto; or under the provisions of any other enactment for the time being in force relating to the limitation of the liability of the owners of seagoing vessels.

**"Sec. 9.   Discrimination between competing shippers**

"Nothing contained in this chapter [this note] shall be construed as permitting a common carrier by water to discriminate between competing shippers similarly placed in time and circumstances, either (a) with respect to their right to demand and receive bills of lading subject to the provisions of this chapter [this note]; or (b) when issuing such bills of lading, either in the surrender of any of the carrier's rights and immunities or in the increase of any of the carrier's responsibilities and liabilities pursuant to section 1305 of this title [section 5 of this note]; or (c) in any other way prohibited by the Shipping Act, 1916, as amended.

**"Sec. 10.**   [Formerly set out as  49 App. U.S.C.A. §  25 , and repealed by Sept. 18, 1940, c. 722, T. I, §  14(a), 54 Stat. 919.]

**"Sec. 11.   Weight of bulk cargo**

"Where under the customs of any trade the weight of any bulk cargo inserted in the bill of lading is a weight ascertained or accepted by a third party other than the carrier or the shipper, and the fact that the weight is so ascertained or accepted is stated in the bill of lading, then, notwithstanding anything in this chapter [this note], the bill of lading shall not be deemed to be prima facie evidence against the carrier of the receipt of goods of the weight so inserted in the bill of lading, and the accuracy thereof at the time of shipment shall not be deemed to have been guaranteed by the shipper.

**"Sec. 12.   Liabilities before loading and after discharge; effect on other laws**

"Nothing in this chapter [this note] shall be construed as superseding any part of sections 190 to 196 of this title, or of any other law which would be applicable in the absence of this chapter [this note], insofar as they relate to the duties, responsibilities, and liabilities of the ship or carrier prior to the time when the goods are loaded on or after the time they are discharged from the ship.

**"Sec. 13.   Scope of chapter [note]; ' '; ' '**

"This chapter [this note] shall apply to all contracts for carriage of goods by sea to or from ports of the United States in foreign trade.   As used in this chapter [this note] the term 'United States' includes its districts, territories, and possessions.   The term 'foreign trade' means the transportation of goods between the ports of the United States and ports of foreign countries.   Nothing in this chapter [this note] shall be held to apply to contracts for carriage of goods by sea between any port of the United States or its possessions, and any other port of the United States or its possessions:   *Provided, however* , That any bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea between such ports, containing an express statement that it shall be subject to the provisions of this chapter [this note], shall be subjected hereto as fully as if subject hereto by the express provisions of this chapter [this note]:   *Provided further* , That every bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea from ports of the United States, in foreign trade, shall contain a statement that it shall have effect subject to the provisions of this chapter [this note].

[A proviso in second sentence that the Philippine Legislature might by law exclude its application to transportation to or from ports of the Philippine Islands was omitted in view of Proc. No. 2695, set out as a note under §  1394 of Title 22, Foreign Relations and Intercourse, which proclaimed the independence of the Philippines.]

**"Sec. 14.   Suspension of provisions by President**

A013

"Upon the certification of the Secretary of Transportation that the foreign commerce of the United States in its competition with that of foreign nations is prejudiced by the provisions, or any of them, of sections 1301 to 1308 of this title [sections 1 to 8 of this note], or by the laws of any foreign country or countries relating to the carriage of goods by sea, the President of the United States may, from time to time, by proclamation, suspend any or all provisions of said sections for such periods of time or indefinitely as may be designated in the proclamation.

  The President may at any time rescind such suspension of said sections, and any provisions thereof which may have been suspended shall thereby be reinstated and again apply to contracts thereafter made for the carriage of goods by sea.   Any proclamation of suspension or rescission of any such suspension shall take effect on a date named therein, which date shall be not less than ten days from the issue of the proclamation.

"Any contract for the carriage of goods by sea, subject to the provisions of this chapter [this note], effective during any period when sections 1301 to 1308 of this title [sections 1 to 8 of this note], or any part thereof, are suspended, shall be subject to all provisions of law now or hereafter applicable to that part of said sections which may have thus been suspended.

**"Sec. 15.    Effective date; retroactive effect**

"This chapter [this note] shall take effect ninety days after April 16, 1936; but nothing in this chapter [this note] shall apply during a period not to exceed one year following April 16, 1936, to any contract for the carriage of goods by sea, made before April 16, 1936, nor to any bill of lading or similar document of title issued, whether before or after such date in pursuance of any such contract as aforesaid.

**"Sec. 16.    Short title**

"This chapter [this note] may be cited as the 'Carriage of Goods by Sea Act.' " "

[Note was classified to former 46 App. U.S.C.A. §§ 1300 to 1315 prior to the general revision and enactment into positive law of Title 46, Shipping, by Pub.L. 109-304, Oct. 6, 2006, 120 Stat. 1485, but was not repealed, omitted, or restated by Pub.L. 109-304.]

A014

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Appellate CM/ECF system on September 30, 2011.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


/s/ ALICE KNUDSEN
Alice Knudsen

## PROOF OF SERVICE

I am employed in the City and County of San Francisco by the law firm of GIBSON ROBB & LINDH LLP, 201 Mission Street, Suite 2700, San Francisco, California 94105. I am over the age of 18 years and not a party to the within action. I am readily familiar with the practice of GIBSON ROBB & LINDH LLP with respect to the collection and processing of pleadings, discovery documents, motions and all other documents which must be served upon opposing parties or other counsel in litigation. On September 30, 2011, I electronically filed with the Office of the Clerk, U.S. Court of Appeals for the Ninth Circuit, the following document(s):

### APPELLANTS' OPENING BRIEF

which will be served by electronic mail notice on the following:

**Electronic Mail Notice List**

> **James J McMullen , JR**
> JMcMullen@GordonRees.com; PLangevin@gordonrees.com

> **Alan Nakazawa**
> alan.nakazawa@cnc-law.com; email@cnc-law.com

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on September 30, 2011, at San Francisco, California.

 /s/ ALICE KNUDSEN
Alice Knudsen