No. 11-55805

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| PACIFIC ASIAN ENTERPRISES, a California corporation; et. al., | ) ) ) | D.C. No. 3:10-cv-01335-LAB-WVG Southern District of California, San Diego |
| Plaintiffs - Appellants, | ) ) | |
| v. | ) ) | |
| CROSS CHARTERING N.V., a foreign limited liability company; et al., Defendants - Appellees. | ) ) ) ) ) ) | |

Appeal From The United States District Court
For The Southern District of California

--------------------------------------------------------

APPELLANTS' REPLY BRIEF

--------------------------------------------------------

GIBSON ROBB & LINDH, LLP
Stanley L. Gibson, SBN 047882
Konstantin Savransky, SBN 267707
201 Mission Street, Suite 2700
San Francisco, CA 94105
Telephone: (415) 348-6000

Attorneys for Plaintiffs - Appellants
PACIFIC ASIAN ENTERPRISES, CORP.
and RLI INSURANCE CO.

# <u>TABLE OF CONTENTS</u>

<u>Page Nos.</u>

INTRODUCTION. ................................................................................ 1

ARGUMENT. ...................................................................................... 4

    I.    THE BOL'S CLAUSE PARAMOUNT FAILS TO
        INCORPORATE COGSA INTO THE BOL FOR
        THE NORDHAVN SHIPMENT. .......................................................... 4

        A.    JUST AS THE CLAUSE PARAMOUNT IN
                *CHESTER*, CC'S CLAUSE PARAMOUNT FAILS
                TO INCORPORATE COGSA INTO THE BOL FOR
                ON-DECK CARRIAGE BECAUSE IT FAILS TO
                NEGATE THE EXCLUSIONARY EFFECT OF
                COGSA SECTION 1(C). ............................................. 4

        B.    SSA'S DIVERSIONARY FACTUAL ARGUMENTS
                DO NOT CHANGE THE FACT THAT CC'S BOL
                FAILED TO INCORPORATE COGSA. ................................ 7

        C.    THE BOL MUST BE CONSTRUED STRICTLY AGAINST
                CC. .......................................................... 8

    II.    THE HARTER ACT APPLIES TO CC'S BOL AS A
        MATTER OF LAW. ....................................................................... 10

        A.    IF COGSA DOES NOT APPLY TO ON-DECK
                SHIPMENTS UNDER ON-DECK BOLS, WHAT
                LAW DOES?. ...................................................... 10

         B.    *CHESTER* DOES NOT PRECLUDE THE HARTER
                ACT'S APPLICATION. ............................................. 13

    III.    *EVEN IF CC'S BOL PROPERLY INCORPORATED*
        *COGSA*, THE FORUM-SELECTION CLAUSE IS
        UNENFORCEABLE. ....................................................................... 14

# TABLE OF CONTENTS

Page Nos.

IV.   CC'S BOL FAILED TO GIVE PAE PRIMA FACIE
      FAIR NOTICE OF ITS PACKAGE LIMITATION.. ....................... 17

V.    THE FORUM-SELECTION CLAUSE IS
      UNENFORCEABLE UNDER *SKY REEFER*.................................. 19

      A.   *SKY REEFER* CONTROLS "NON-COGSA"
           MARITIME CASES, INCLUDING THIS ONE.. .................. 19

      B.   PAE'S SUCCESSFUL SHOWING THAT A
           BELGIAN COURT – UNLIKE A U.S. COURT
           – WILL LIKELY ENFORCE THE BOL'S
           EXCULPATORY CLAUSES AND FAIL TO
           APPLY THE FAIR NOTICE AND OPPORTUNITY
           RENDERS THE FORUM-SELECTION CLAUSE
           UNENFORCEABLE.. ............................................... 21

      C.   WHERE A FOREIGN COURT FAILS TO APPLY
           THE FAIR NOTICE AND OPPORTUNITY
           DOCTRINE RESULTING IN A DIMINISHED
           RECOVERY VIS-À-VIS THE RECOVERY IN A
           U.S. COURT, *BREMEN* AND *SKY REEFER*
           RENDER A FORUM-SELECTION CLAUSE
           UNENFORCEABLE. ............................................... 22

VI.   SUPREME COURT AND NINTH CIRCUIT PRECEDENT
      INVALIDATE ANY BOL CLAUSES ATTEMPTING
      TO EXCULPATE SSA FOR NEGLIGENTLY DESTROYING
      PAE'S YACHT.. .................................................................. 25

VII.  STANDARD OF REVIEW OF VENUE MOTIONS.. ..................... 26

VIII. ALL ISSUES WERE EITHER RAISED BELOW OR
      INVOLVE PURE ISSUES OF LAW.. ............................................. 27

CONCLUSION.................................................................................... 29

CERTIFICATE OF COMPLIANCE...................................................... 32

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

Page Nos.

*Access Telecom, Inc. v. MCI Telecommunications Corp.*
197 F.3d 694 (5th Cir. 1999). ............................................................. 27

*Blanchard Lumber Co. v. S. S. Anthony II*
259 F.Supp. 857 (S.D.N.Y 1966). ........................................... 11, 13, 14

*C-ART, Ltd. v. Hong Kong Islands Line America, S.A.*
940 F.2d 530 (9th Cir. 1991). ............................................................. 1, 9

*The Carriso,* 27 F.2d 1015, 1015 (N.D. Cal. 1928)
*aff'd sub nom. Davidson v. Flood Bros.*
30 F.2d 279 (9th Cir. 1929). .................................................................... 14

*Chester v. Maritima del Litoral S.A.*
586 F. Supp. 192 (E.D. Wis. 1983)..................................... 4, 5, 6, 13, 14

*Columbia Machine, Inc. v. DFDS Transp. (US), Inc.*
CV 06-1140 ABC PLAX, 2007 WL 5173280, at *5-7,
(C.D. Cal. Oct. 4, 2007). ........................................................ 5, 6, 17, 27

*Dream Palace v. Cnty. of Maricopa*
384 F.3d 990 (9th Cir.2004). ................................................... 11, 12, 47

*Exxon Mobil Corp. v. Allapattah Services, Inc.*
545 U.S. 546 (2005)............................................................................. 12

*F.D.I.C. v. Woodside Const., Inc.*
979 F.2d 172 (9th Cir. 1992). .......................................................... 28, 29

*Fed. Ins. Co. v. Union Pacific R. Co.*
651 F.3d 1175 (9th Cir. 2011).. ....................................................... 25, 29

*Fireman's Fund Ins. Companies v. Vessel "OOCL CHALLENGE"*
CV 90-6089 MRP, 1991 WL 343373
(C.D. Cal. Oct. 3, 1991). ................................................................. 23, 24

# TABLE OF AUTHORITIES
## (Continued)

Page Nos.

*Grace Line, Inc. v. Todd Shipyards Corp.*
500 F.2d 361 (9th Cir. 1974). ....................................................... 25, 26

*Globe Solvents Co. v. The California*
167 F.2d 859 (3d Cir. 1948). .............................................................. 14

*Institute of London Underwriters v. Sea-Land Service, Inc.*
881 F.2d 761 (9th Cir. 1989). ........................................ 1, 9, 14, 15, 16

*Komatsu, Ltd. v. States S.S. Co.*
674 F.2d 806 (9th Cir. 1982). .............................................................. 17

*Liverpool & G.W. Steam Co. v. Phenix Ins. Co.*
129 U.S. 397 (1889). ........................................................................... 13

*MacSteel Int'l USA Corp. v. M/V IBN Abdoun*
154 F. Supp. 2d 826 (S.D.N.Y. 2001). ................................................ 18

*Majestic Electronics, Inc. v. M/V JIN HE*
CV98-6750GHK(CWX), 1999 WL 694186
(C.D. Cal. May 10, 1999) . ............................................................ 21, 22

*Mazda Motors of Am., Inc. v. M/V COUGAR ACE*
CIV. 07-62-HU, 2007 WL 2344934 (D. Or. Aug. 15, 2007)
*aff'd,* 565 F.3d 573 (9th Cir. 2009). ........................................... 8, 9, 10

*Mazda Motors of Am., Inc. v. M/V COUGAR ACE*
565 F.3d 573 (9th Cir. 2009). ............................................................... 9

*The Milwaukee Bridge*
26 F.2d 327 (2d Cir. 1928). ................................................................. 10

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*
473 U.S. 614 (1985). ..................................................................... 19, 20

# TABLE OF AUTHORITIES
(Continued)

Page Nos.

*M/S Bremen v. Zapata Off-Shore Co.*
407 U.S. 1 (1972) ............................................... 22, 24

*Mori Seiki USA, Inc. v. M/V Alligator Triumph*
990 F.2d 444 (9th Cir.1993). ............................. 9, 10

*N. River Ins. Co. v. Fed Sea/Fed Pac Line*
647 F.2d 985 (9th Cir. 1981). .......................... 3, 10, 11, 28, 29

*Nemeth v. Gen. S.S. Corp., Ltd.*
694 F.2d 609 (9th Cir. 1982). ............................. 24

*New York, N. H. & H. R. Co. v. Nothnagle*
346 U.S. 128 (1953)............................................. 24

*Nippon Fire & Marine Ins. Co. v. M/V Spring Wave*
92 F. Supp. 2d 574 (E.D. La. 2000)..................... 21, 22

*Norfolk S. Ry. Co. v. Kirby*
543 U.S. 14 (2004)............................................. 8, 9, 10, 12

*PAC Global Insurance v. Gramter International*
2008 A.M.C. 1766 (C.D. Cal. 2007)...................... 22, 23, 24

*Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*
741 F.2d 273 (9th Cir.1984). ............................. 26

*Rock-Ola Mfg. Corp. v. Filben Mfg. Co.*
168 F.2d 919 (8th Cir. 1948) . ............................. 7

*Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*
525 F.3d 409 (6th Cir. 200.................................. 10

*Sumitomo Corp. of America v. M/V Sei Kim,*
632 F. Supp. 824 (S.D.N.Y. 1985). ...................... 20

# TABLE OF AUTHORITIES
### (Continued)

Page Nos.

*Tessler Bros. (B.C.) Ltd. v. Italpacific Line*
494 F.2d 438 (9th Cir. 1974). ..................................................... 2, 12, 16

*Tokio Marine & Nichido Fire Ins. Co., Ltd. v. M/V SOPHIE RICKMERS*
CIV.A. H-09-886, 2011 WL 2970821
(S.D. Tex. July 21, 2011). ...................................................................... 18

*Union Pac. R.R. v. Burke*
255 U.S. 317 (1921)................................................................... 24, 25, 28

*United States v. Atlantic Mut. Ins. Co.*
343 U.S. 236 (1952).................................................................... 25, 26

*United States v. Johnson*
256 F.3d 895 (9th Cir. 2001). ............................................................... 26

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*
515 U.S. 528 (1995) ............................................ 2, 4, 13, 19, 20, 21, 22, 24, 26, 30

*Wemhoener Pressen v. Ceres Marine Terminals, Inc.*
5 F.3d 734 (4th Cir.1993). ............................................................ 15, 161

### Statutes

46 U.S.C. § 30701................................................................... 10, 15, 24

46 U.S.C. § 30702.......................................................................... 10

46 U.S.C. § 30704........................................................................ 20

COGSA, 46 U.S.C. 30701, Note § 1(c). ...................... 1, 2, 4, 5, 6, 9, 10, 11, 27, 29

COGSA, 46 U.S.C. 30701, Note § 3(8)......................................... 15, 20

COGSA, 46 U.S.C. 30701, Note § 4(5).............................................. 24

# **TABLE OF AUTHORITIES**
(Continued)

Page Nos.

COGSA, 46 U.S.C. 30701, Note § 13. ........................................................... 10, 11


Other Authorities

Federal Rule of Civil Procedure 44.1...................................................... 27

## **INTRODUCTION**

All issues in this case arise from the language chosen by Cross Chartering ("CC") in the bill of lading ("BOL") it used in carrying PAE's yacht from Taiwan to San Diego. It is the law of this Court that bills of lading are "contracts of adhesion." *C-ART, Ltd. v. Hong Kong Islands Line America, S.A.*, 940 F.2d 530, 532 (9th Cir. 1991). Any ambiguity in a BOL "must be construed in favor of the shipper and against the carrier." *Institute of London Underwriters v. Sea-Land Service, Inc.*, 881 F.2d 761, 767 (9th Cir. 1989). Appellees seek to reverse these rules of construction and have the Court interpret all ambiguities against PAE and to ignore language harmful to their positions.

The parties agree that where a ship carries goods on deck pursuant to an on-deck BOL, COGSA does not apply *ex proprio vigore* to the BOL for that voyage. COGSA Section 1(c) makes COGSA inapplicable to BOLs for the carriage of on-deck cargo by excluding deck cargo from the definition of "goods." CC acknowledges that because the yacht was carried on deck pursuant to an on-deck BOL, CC's Clause Paramount must be "sufficiently clear to guarantee" COGSA's incorporation into CC's BOL. *See* CC's Brief, p. 15.

CC's Clause Paramount incorporates COGSA wholly, including COGSA Section 1(c) and its exclusion of COGSA's governance over BOLs for carriage of on-deck cargo. CC's Clause Paramount does not reference or negate Section 1(c)

-1-

and is otherwise unclear regarding its application to on-deck cargo. Realizing this problem and seeking COGSA's incorporation into its BOL, CC would have the Court abandon the longstanding rule that BOLs are construed against carriers and rewrite its BOL by adding into the BOL a negation of the exclusionary effect of Section 1(c) or ignoring it. Moreover, to save its failed Clause Paramount, CC would like the Court to ignore language *CC chose to put in its Booking Note* that states that CC's BOL "supersedes" CC's Booking Note. CC cannot pick and chose which language in its BOL it wishes to enforce or ignore. It is bound by *all* of the language it used.

"Congress passed the Harter Act and COGSA to counteract the persistent efforts of carriers, who are the drafters of ocean bills of lading, to insert all embracing exceptions to liability." *Tessler Bros. (B.C.) Ltd. v. Italpacific Line*, 494 F.2d 438, 445 (9th Cir. 1974).

CC's BOL contains exculpatory clauses that if enforced, would exculpate CC and SSA from all liability for destroying PAE's $1.8 million yacht. Consequently, CC knows that in order to enforce the BOL's forum-selection clause under *Sky Reefer*, CC must demonstrate that a Belgian court – like a U.S. court – will not enforce the exculpatory clauses. Because CC's BOL does not properly incorporate COGSA or any other U.S. law, a Belgian court would be left to apply Belgian law *as required by the clause CC seeks to enforce* and would enforce the

-2-

exculpatory clauses.  In contrast, a U.S. court applying the Harter Act would void the exculpatory clauses.  Justifiably fearing this discrepancy, CC asks the Court again to rewrite *its BOL* and to ignore *its exculpatory clauses*.  To achieve this improper reformation, CC goes as far as to ask the Court to enforce *its unilateral stipulation* that it will not enforce *its exculpatory clauses*.

Furthermore, CC wants the Court to reform *its package limitation* in order to make it enforceable under the fair notice and opportunity doctrine.  The package limitation begins, "If COGSA applies . . . ." CC wants the Court to ignore that *CC* conditioned the application of *its package limitation* on COGSA's incorporation and correct its otherwise ambiguous BOL.

The failure of CC's BOL to properly incorporate COGSA prompts the question: what law does apply to CC's BOL?  The answer is the Harter Act because it, unlike COGSA, applies *ex proprio vigore* to all "goods" which includes on-deck BOLs for international shipments *of on-deck cargo*.  Appellees would have the Court ignore the Harter Act's congressionally mandated domain based on *North River*.  However, that case is fully distinguishable because the issue of proper incorporation was not present in *North River* as it is here.

Furthermore, even if CC's BOL somehow incorporates COGSA, an incorporated-COGSA does not have "statute rank" and thus cannot invalidate CC's exculpatory clauses.  However, in the U.S. – unlike in Belgium – the Harter Act

renders CC's exculpatory clauses invalid. Therefore, regardless of whether or not CC's BOL incorporates COGSA, under *Sky Reefer*, the forum-selection clause remains unenforceable.

## **ARGUMENT**

### I. **THE BOL'S CLAUSE PARAMOUNT FAILS TO INCORPORATE COGSA INTO THE BOL FOR THE NORDHAVN SHIPMENT.**

#### A. **JUST AS THE CLAUSE PARAMOUNT IN *CHESTER*, CC'S CLAUSE PARAMOUNT FAILS TO INCORPORATE COGSA INTO THE BOL FOR ON-DECK CARRIAGE BECAUSE IT FAILS TO NEGATE THE EXCLUSIONARY EFFECT OF COGSA SECTION 1(C).**

In *Chester v. Maritima del Litoral S.A.*, 586 F. Supp. 192, 196-198 (E.D. Wis. 1983), the court found that the clause paramount at issue in that case failed to incorporate COGSA into the BOL for on-deck carriage because it – just as CC's Clause Paramount – did not negate the exclusionary effect of COGSA Section 1(c), which excludes from the definition of goods, and thereby application of COGSA, cargo carried on deck pursuant to an on-deck BOL.

In *Chester*, the BOL clearly stated that the goods "*are hereby stated as being carried on deck and which are so carried." Id.* at 196. Yet, the paramount clause failed to incorporate the Hague Rules (which the court treated as COGSA in the U.S.) into the BOL for on-deck carriage: "The Hague Rules . . . as enacted in the country of shipment shall apply to this contract." *Id.* at 196-198. The *Chester* court held this clause did not incorporate COGSA into the BOL for on-deck cargo

-4-

because incorporating COGSA wholly also incorporates COGSA Section 1(c) – and as the court thoroughly explained – failure explicitly to negate the effect of Section 1(c) for on-deck carriage is fatal to incorporation. *See id.* To hold otherwise would ignore Section 1(c).

Furthermore, *Chester's* reasoning in support of its holding that the incorporation clause failed to incorporate COGSA into the BOL for on-deck cargo parallels *Columbia Machine's* reasoning with respect to its finding that Clause 27(1), in that case, failed to incorporate COGSA. *See Columbia Machine, Inc. v. DFDS Transp. (US), Inc.*, CV 06-1140 ABC PLAX, 2007 WL 5173280, at *5-7, (C.D. Cal. Oct. 4, 2007).

*Columbia Machine* found that between the two incorporation clauses at issue in that case, Clause 15(2) trumped Clause 27(1) with regard to incorporation because Clause 15(2), which incorporated the Hague Rules, expressly included on-deck cargo within the definition of "goods" that were governed by the Hague Rules. *Id.*, at *5-7. CC admits that its Clause Paramount contains language "unlike the language" in the successful incorporation clause in *Columbia Machine*. CC's Brief, p. 18. Yet, CC argues that *Columbia Machine* does not prevent its Clause Paramount from incorporating COGSA despite the fact that CC's Clause Paramount fails to negate the exclusionary effect of COGSA Section 1(c) just like the failed Clause 27(1) in *Columbia Machine*. *See id.* CC's argument boils down to

-5-

the fact that its Clause Paramount is good enough to incorporate COGSA because its BOL does not contain a better incorporation clause – one that negates the exclusionary effect of Section 1(c), like Clause 15(2) from *Columbia Machine*. CC makes this argument, despite acknowledging that BOL language must be "sufficiently clear to guarantee [incorporation.]" *Id.*, p. 15.

Even if the Court somehow finds it persuasive, CC's argument that its Clause Paramount incorporates COGSA into the BOL for on-deck carriage despite its lack of clarity because no other clause trumps it, fails utterly when confronted with *Chester*. In *Chester*, unlike in *Columbia Machine*, the court found that the incorporation clause failed to incorporate COGSA into the BOL for on-deck cargo because it did not negate the exclusionary effect of Section 1(c) *without comparing the clause to any other incorporation clauses*. *See* 586 F. Supp. at 197-198. CC's Clause Paramount, like the incorporation clause in *Chester*, fails to incorporate COGSA into the BOL for on-deck cargo when examined independent of other clauses in the BOL.

The Court should reject CC's ruse that its Clause Paramount is sufficiently clear to incorporate COGSA into the BOL for on-deck carriage despite the fact that it does not negate the exclusionary effect of Section 1(c) because there is no other clearer clause in its BOL that addresses Section 1(c).

### B.   SSA'S DIVERSIONARY FACTUAL ARGUMENTS DO NOT CHANGE THE FACT THAT CC'S BOL FAILED TO INCORPORATE COGSA.

SSA argues that PAE has hired CC 140 times and that CC has been using the same BOL and Booking Note ("BN") since 2001. SSA's Brief, p. 2-5. These facts do not help Appellees prove that CC's BOL incorporated COGSA for on-deck carriage. If anything, they highlight that CC's BOL is a contract of adhesion.

As SSA points out, the BOL's first page contains "typewritten terms specific to the shipment." SSA's Brief, p.3. Therefore, past BOLs were not identical to the BOL at issue here because past incorporation clauses could have sought to incorporate different bodies of law and designated different litigation forums. The record is silent regarding the specifics of past BOLs, and past dealings are thus inapposite.

Further, CC would have the Court rely on its *superseded* BN to bolster its argument that COGSA was incorporated into its BOL for on-deck carriage. The BN at issue in *this* case, states that *it* will be "superseded by the terms of the bill of lading." ER 0071. What Appellees really want is for the Court to reform the BN and strike out this statement. That is impossible. *See Rock-Ola Mfg. Corp. v. Filben Mfg. Co.*, 168 F.2d 919, 923 (8th Cir. 1948) (Reformation only allowed for "accident, inadvertence, mistake, fraud, or inequitable conduct."). The "problem" CC wants this Court to "fix," was created solely by CC's use of the word

"superseded." No doubt, that word has come to CC's rescue in other situations. It cannot ignore it in this one.

Likewise, Appellees' unilateral stipulations–erroneously relied on by the District Court–attempting to strike the exculpatory clauses out of the BOL and force an agreement that COGSA will apply in Belgium are improper attempts to reform the BOL. The BOL says what it says. Basic fairness and contract law require that CC's BOL must be judged by the terms it contains and that it be strictly construed against CC.

Appellees contend that PAE's *Belgian* law expert conceded that CC's BOL incorporates COGSA for the Nordhavn shipment. CC's Brief, p. 13-14; SSA's Brief, p. 42. However, PAE's expert did not take a stance that CC's BOL incorporated COGSA. *See* ER 0060 ("[I]n case the liability . . . is not governed by the COGSA"). PAE's expert wrote several pages regarding how *Belgian law* would apply to the BOL. ER 0060-63.

This Court should interpret and enforce *this* BOL on its terms – not on unknown terms of past dealings, unilaterally offered stipulations, or superseded booking notes.

## C. THE BOL MUST BE CONSTRUED STRICTLY AGAINST CC.

SSA mistakenly relies on *Mazda Motors*, which in turn relies on *Kirby*, to advocate that BOLs are no longer construed against the carrier. *Mazda Motors of*

-8-

*Am., Inc. v. M/V COUGAR ACE*, CIV. 07-62-HU, 2007 WL 2344934 (D. Or. Aug. 15, 2007) *aff'd,* 565 F.3d 573 (9th Cir. 2009). However, this Court has found that BOLs "as contracts of adhesion, are strictly construed against the carrier." *C-ART, Ltd. v. Hong Kong Islands Line America, S.A.*, 940 F.2d 530, 532 (9th Cir. 1991). Any ambiguity in the BOL "must be construed in favor of the shipper and against the carrier." *Institute of London Underwriters v. Sea-Land Service, Inc.*, 881 F.2d 761, 767 (9th Cir. 1989). *Mazda Motors* and *Kirby* do not overturn these time-honored basic principles of construction and are easily distinguished.

The *Kirby* Court did not find any ambiguity in the Himalaya clause at issue in that case. *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 31 (2004). Similarly, the *Mazda Motors* Court rejected, "[Appellants'] proposed construction because the Himalaya clause and its incorporated definition of Sub-Contractor are **unambiguous**." *Mazda Motors of Am., Inc. v. M/V COUGAR ACE*, 565 F.3d 573, 579 (9th Cir. 2009) (emphasis added).

In contrast, CC's BOL – with its multiple vague incorporation clauses – and CC's Clause Paramount – including the shipper's-risk clause coupled with silence regarding COGSA Section 1(c) – are ambiguous with regard to incorporation. *See* Appellants' Opening Brief, p. 15-19. These ambiguities in CC's BOL trigger the strict construction rule. As the Sixth Circuit explained in a post-*Kirby* decision citing to the Ninth Circuit's *Mori Seiki*, "Courts resolve these ambiguities against

-9-

the drafters of the bill of lading (usually the carriers), but do not hesitate to rule in favor of carriers where there are no ambiguities in the contract." *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 423 (6th Cir. 2008) (citing *Mori Seiki USA, Inc. v. M/V Alligator Triumph,* 990 F.2d 444, 448 (9th Cir.1993). Therefore, this Court should not hesitate to distinguish *Mazda Motors* and *Kirby*, as they do not preclude application of the construction-against-carrier rule for *ambiguous* BOLs.

## II. THE HARTER ACT APPLIES TO CC'S BOL AS A MATTER OF LAW.

### A. IF COGSA DOES NOT APPLY TO ON-DECK SHIPMENTS UNDER ON-DECK BOLS, WHAT LAW DOES?

COGSA Section 13 makes COGSA applicable to BOLs for international shipments. 46 U.S.C. 30701, Note §13. But COGSA Section 1(c) makes COGSA *inapplicable* to BOLs for shipments *of on-deck cargo*. 46 U.S.C. 30701, Note §1(c). As a result, what law applies to a BOL for international shipment of on-deck cargo when the BOL fails to incorporate COGSA?

SSA recognizes "It is true that default statutory schemes can apply in the absence of COGSA." SSA's Brief, p. 36. The obvious default statutory scheme that applies in COGSA's absence is the Harter Act – which applies *ex proprio vigore* to on-deck BOLs for international shipments of on-deck cargo. 46 U.S.C. 30702; *see* Appellants' Opening Brief, p.21-23; *e.g. The Milwaukee Bridge*, 26 F.2d 327 (2d Cir. 1928). Yet, relying on *N. River Ins. Co. v. Fed Sea/Fed Pac Line*, 647 F.2d

-10-

985 (9th Cir. 1981) and its progeny, Appellees argue that the Harter Act does not apply to CC's BOL for the Nordhavn's international, on-deck shipment.

The Court should distinguish *North River* and its progeny from the instant case because in those cases – unlike here – COGSA was properly incorporated into the BOL for on-deck carriage. Therefore, COGSA applied instead of the Harter Act. *See* CC's Brief, p. 22 (in each case CC cites, the BOL incorporated COGSA). Because CC's BOL does not incorporate COGSA, the Harter Act applies *ex proprio vigore*.

Furthermore, COGSA-era cases such as *Saudi Pearl* and *Blanchard Lumber* have applied the Harter Act to on-deck BOLs for international shipments of on-deck cargo as the default regime. *See* Appellants' Opening Brief, p. 21-23. Consistent with U.S. Supreme Court principles of statutory construction, *Blanchard Lumber* explains that the Harter Act applies to on-deck BOLs for international shipments of on-deck cargo because COGSA does not supersede the Harter Act for international shipments *of on-deck cargo*:

> In the absence of an affirmative legislative expression to the contrary . . . I see no reason for holding that the Harter Act is superseded in all cases by [COGSA] as to deck cargo in the 'tackle to tackle' period. *Blanchard Lumber Co. v. S. S. Anthony II*, 259 F.Supp. 857, 864-865 (S.D.N.Y 1966); *see* Appellants' Opening Brief, p.26-27.

Essentially, the Harter Act seamlessly fills the hole Congress created between COGSA Section 13 and Section 1(c) for international *on-deck* shipments.

This is consistent with Congressional policy underlying COGSA and the Harter Act. *Tessler Bros. (B.C.) Ltd. v. Italpacific Line*, 494 F.2d 438, 444 (9th Cir. 1974) (Congress passed the Harter Act and COGSA to counteract BOL exculpatory clauses).

SSA also relies on legislative history to bolster its anti-Harter Act argument. *See* SSA's Brief, p. 38-39. However, the cited legislative history states that Congress "limited" COGSA's applicability to international voyages; but, the Harter Act was "preserved" for domestic voyages. It does <u>not</u> state that the Harter Act was "limited" to domestic voyages. More importantly, the legislative history does not address the issue at hand: what law applies to international *on-deck* carriage? Additionally, the Supreme Court has warned against relying on legislative history when interpreting statutes because legislative history is "often murky, ambiguous and contradictory . . . an exercise in looking over a crowd and picking out your friends." *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 568 (2005). The cited legislative history is, as the Supreme Court warns – ambiguous because it does not address whether the Harter Act applies *ex proprio vigore* to BOLs in international carriage *of on-deck cargo*.

Finally, if somehow the Harter Act does not apply in COGSA's absence, then U.S. federal substantive law must apply. *See Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 27 (2004). Federal common law invalidates BOL exculpatory clauses. *See*

*Liverpool & G.W. Steam Co. v. Phenix Ins. Co.*, 129 U.S. 397, 441-42 (1889).

Therefore, if federal common law applies, CC's forum-selection clause remains

unenforceable under *Sky Reefer* because a U.S. court applying U.S. common law

will invalidate the BOL's exculpatory clauses – while a Belgian court applying

Belgian law will enforce them. *See* Appellants' Opening Brief, p. 35-37.

## B. *CHESTER* DOES NOT PRECLUDE THE HARTER ACT'S APPLICATION.

SSA argues that *Chester v. Maritima del Litoral S.A.*, 586 F. Supp. 192

(E.D. Wis. 1983) precludes the Harter Act's application to CC's BOL. SSA's

Brief, p. 21, 33.  In *Chester*, after first correctly finding that COGSA was not

incorporated into the BOL for on-deck cargo, the court incorrectly refused to apply

the Harter Act to invalidate an exculpatory clause in an on-deck international

shipment. 586 F. Supp. at 197-199.

The *Chester* court's inaccurate reliance on *Blanchard Lumber* for the

proposition that – because COGSA does not apply to a BOL for on-deck carriage,

neither does the Harter Act – is nonsensical because *Blanchard Lumber*

specifically and correctly held that the Harter Act applies *ex proprio vigore* to an

on-deck BOL for international on-deck carriage where COGSA is not

incorporated. *Id.* at 198; *see Blanchard Lumber Co. v. S. S. Anthony II*, 259 F.

Supp. 857, 869 (S.D.N.Y. 1966).

-13-

Additionally, inaccurately relying on *The Carriso*, the *Chester* court insinuated that the Harter Act allows for the enforcement of exculpatory clauses in on-deck BOLs. 586 F. Supp. at 198 (citing *The Carriso*, 27 F.2d 1015, 1015 (N.D. Cal. 1928) *aff'd sub nom. Davidson v. Flood Bros.*, 30 F.2d 279 (9th Cir. 1929)). However, *The Carriso* held that the Harter Act allows for BOL stipulations for on-deck carriage – <u>not</u> that the parties can include exculpatory clauses in on-deck BOLs. *See* 27 F.2d at 1015 (carrier not liable under the Harter Act where seawater, a statutorily excepted "danger of the sea," damaged the on-deck cargo, and the carrier was not negligent: "complete dunnaging would not have prevented the damage"); *see Globe Solvents Co. v. The California*, 167 F.2d 859, 863 (3d Cir. 1948) (citing to *Davidson* and explaining that "dangers of the sea" are excepted by COGSA and the Harter Act, but that a carrier's negligence can lead to liability for on-deck shipments).

*Chester* misreads *The Carriso* and *Blanchard Lumber*. Thus, notwithstanding *Chester*, the Harter Act applies to CC's BOL *ex proprio vigore*.

## III.   *EVEN IF CC'S BOL PROPERLY INCORPORATED COGSA*, **THE FORUM-SELECTION CLAUSE IS UNENFORCEABLE.**

When COGSA is incorporated into a BOL for carriage of on-deck goods to which it does not apply *ex proprio vigore* "[COGSA's] provisions are merely terms of the contract evidenced by the bill of lading."  *Inst. of London Underwriters v. Sea-Land Serv., Inc.*, 881 F.2d 761, 765 (9th Cir. 1989) (internal citation and

quotation omitted). And, as the Ninth Circuit has held, "**[BOL] terms inconsistent with COGSA**, but which are otherwise valid contract terms, **may be given force where COGSA is incorporated** into a contract for foreign carriage to which it would not apply *ex proprio vigore." Id.* at 766 (emphasis added).

CC speculates that under *London Underwriters*, a BOL term that violates COGSA would not be enforced. CC's Brief, p. 39. Logically, if a term violates COGSA, it is inconsistent with COGSA. The exculpatory clauses in CC's BOL are unmistakably BOL "terms inconsistent with COGSA." COGSA Section 3(8) invalidates BOL exculpatory clauses. 46 U.S.C. 30701, Note, §3(8). Therefore, under *London Underwriters*, assuming CC's BOL incorporates COGSA, the exculpatory clauses will be "given force." The District Court below acknowledged this possible outcome. *See* ER 0010 n. 11.

In contrast to COGSA, as discussed throughout PAE's briefing, the Harter Act applies *ex proprio vigore* to CC's BOL and would void its exculpatory clauses. Furthermore, in *Wemhoener Pressen*, the Fourth Circuit correctly applied **both COGSA and the Harter Act where COGSA was incorporated** into the BOL for a situation where the Harter Act, unlike COGSA, applied to *ex proprio vigore. See Wemhoener Pressen v. Ceres Marine Terminals, Inc.,* 5 F.3d 734, 739-743 (4th Cir.1993). Under *Wemhoener Pressen,* a U.S. court would apply the Harter Act to

-15-

CC's BOL – even if it incorporates COGSA – to void the BOL's exculpatory clauses.

Moreover, CC's attempt to distinguish *Wemhoener Pressen* fails. *Wemhoener Pressen* addressed extending a $500 package limitation under both COGSA and the Harter Act. *Id.* at 739-743.  Factually, here, there is a greater reason to apply both statutes to CC's BOL to void its exculpatory clauses *See Tessler Bros. (B.C.) Ltd. v. Italpacific Line*, 494 F.2d 438, 445 (9th Cir. 1974)(COGSA and Harter Act enacted to void exculpatory clauses).

If CC's BOL incorporates COGSA for the Nordhavn shipment, a Belgian court will apply COGSA and, as CC's expert explains, the U.S. cases interpreting COGSA[1] – including *London Underwriters* where COGSA is simply a contract term.  Thus, under *London Underwriters*, a Belgian court will enforce CC's exculpatory clauses.  In contrast, a U.S. court would apply the Harter Act and render the exculpatory clauses void. CC's BOL does not reference the Harter Act or any U.S. law except COGSA. *See* ER 0073-74.  Because a Belgian court, unlike a U.S. court will enforce the BOL's exculpatory clauses even if COGSA was incorporated into CC's BOL, the forum-selection clause is unenforceable.

---

[1]     *See* ER 0028 (A "Belgian court is legally bound to interpret and apply COGSA as it would be interpreted by a U.S. court.")

IV.   **CC'S BOL FAILED TO GIVE PAE PRIMA FACIE FAIR NOTICE OF ITS PACKAGE LIMITATION.**

In *Komatsu*, the Ninth Circuit laid out the rule that "the burden of proving 'fair opportunity' is initially upon the carrier" and only "[e]xpress recitation in a [BOL] of the language contained in COGSA § 4(5) is prima facie evidence that the carrier gave the shipper that opportunity." *Komatsu, Ltd. v. States S.S. Co.*, 674 F.2d 806, 809 (9th Cir. 1982). CC's BOL fails to meet this burden because it fails to incorporate COGSA and the package limitation is conditioned on COGSA's incorporation and is otherwise ambiguous. *See* ER 0074; *see Columbia Mach., Inc. v. DFDS Transp. (US), Inc.*, CV 06-1140 ABC PLAX, 2007 WL 5173280, at *9 (C.D. Cal. Oct. 4, 2007) (package limitation did apply because it was conditioned on COGSA's incorporation into the BOL).

In order to circumnavigate the BOL's failure to provide prima facie notice, Appellees argue that PAE's purchase of insurance proves that CC gave PAE fair notice and opportunity to declare a higher value. SSA's Brief, p. 21, 27; CC's Brief, p. 48. This argument is erroneous because only after a carrier meets its prima facie burden through the BOL's language, which CC failed to do, may a court consider extrinsic evidence:

> This *prima* facie showing [of fair notice and opportunity] is made only through language contained in the bill of lading . . . . Only after the carrier has established a *prima* facie case of fair opportunity may the court examine other evidence that notice and fair opportunity existed, for example, the procurement of additional insurance by the shipper or the experience of the shipper. *MacSteel Int'l USA Corp. v. M/V IBN Abdoun*, 154 F. Supp. 2d 826, 832 (S.D.N.Y. 2001) (internal citations omitted).

In each case cited by CC on this issue, the carrier's BOL met the prima facie burden *before* the court considered that the cargo owner purchased cargo insurance. CC's Brief, p.48.

Further, there is no evidence in the record as to what kind of insurance was purchased or why it was purchased. For example, "a shipper may simply want to avoid the uncertainties and costs of litigation often necessary to recover for a cargo loss from a carrier." *Tokio Marine & Nichido Fire Ins. Co., Ltd. v. M/V SOPHIE RICKMERS*, CIV.A. H-09-886, 2011 WL 2970821, at *8 n.31 (S.D. Tex. July 21, 2011).

CC also argues that PAE's declaring no value is somehow evidence that it had notice of the package limitation. CC's Brief, p. 3. This argument is circular. If failure to declare a value is sufficient to prove fair notice and opportunity, a carrier will meet its burden in every case. Moreover, it is the carrier's prima facie burden to prove sufficient notice through a BOL's language, not through a superseded

Booking Note.  Additionally, nothing on the record states that PAE wrote "no value" on the BOL. ER 0068.  To the contrary, CC's agents prepared it. *Id.*

## V. THE FORUM-SELECTION CLAUSE IS UNENFORCEABLE UNDER *SKY REEFER*.

### A. *SKY REEFER* CONTROLS "NON-COGSA" MARITIME CASES, INCLUDING THIS ONE.

In *Sky Reefer*, the Supreme Court held:

> Were there no subsequent opportunity for review and were we persuaded that the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies[,] we would have little hesitation in condemning the agreement as against public policy.' *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540 (1995) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n. 19 (1985)).

Dismissing the case to Belgium will result in PAE being denied its "right to pursue statutory remedies" because a Belgian court, unlike a U.S. court, will enforce CC's exculpatory clauses.  Thus, *Sky Reefer* renders CC's forum-selection clause unenforceable.

SSA argues *Sky Reefer* only applies in COGSA cases. SSA's Brief, p. 7 n. 3. SSA's narrow reading of *Sky Reefer* ignores that the *Mitsubishi Motors* Court stated the waiver-of-remedies rule, adopted in *Sky Reefer*, in a non-maritime context. *See* 473 U.S. at 637 n. 19.  The rule states "waiver of a party's right to pursue statutory remedies" – not, "waiver of a party's right to pursue remedies

-19-

*under COGSA*." 515 U.S. at 540. Thus, *Sky Reefer* confirmed the *Mitsubishi Motors* rule for all maritime cases.

Moreover, *Sky Reefer*, in stating the waiver-of-remedies rule, specifically relied on *Knott*, a decision in which the Supreme Court refused to apply British law to enforce exculpatory clauses unenforceable **under the Harter Act.** *Id.* at 540; *see* Appellants' Opening Brief, p. 37-38 n. 13. Therefore, *Sky Reefer* applies in Harter Act cases.

Furthermore, under *Sky* Reefer, a forum-selection clause is unenforceable where "the substantive law to be applied [in the foreign forum] will reduce the carrier's obligations to the cargo owner below what COGSA guarantees." 515 U.S. at 539. This rule also applies in Harter Act cases. "With minor differences, the substantive obligations of a carrier to the cargo owner are the same under COGSA and the Harter Act." CC's Brief, p.18 (citing *Sumitomo Corp. of America v. M/V Sei Kim,* 632 F. Supp. 824, 833 n.9 (S.D.N.Y. 1985)). Of particular relevance, Harter Act Section 46 U.S.C. 30704 and COGSA Section 3(2) with Section 3(8) provide identical guarantees with respect to a carrier's obligation to non-negligently care for cargo and not stipulate that duty away via an exculpatory clause. *See* Appellants' Opening Brief, p. 40 n.14. Therefore, PAE can rely on both *Sky Reefer* rules to invalidate CC's forum-selection clause.

**B. PAE'S SUCCESSFUL SHOWING THAT A BELGIAN COURT – UNLIKE A U.S. COURT – WILL <u>LIKELY</u> ENFORCE THE BOL'S EXCULPATORY CLAUSES AND FAIL TO APPLY THE FAIR NOTICE AND OPPORTUNITY RENDERS THE FORUM-SELECTION CLAUSE UNENFORCEABLE.**

CC suggests that PAE must prove beyond a "reasonable doubt" that the contractual foreign forum "would preclude a substantive recovery and allow the carrier to escape COGSA's liability rules." CC's Brief, p. 35.

However, *Sky Reefer* never placed such a high burden on a party seeking to elude dismissal to a foreign forum. For example, "[b]eing unable to predict" whether a Japanese court would enforce BOL exculpatory clauses, the *Nippon Fire* Court found "a real **risk** exist[ed] that a Japanese Court" would enforce such clauses and thus refused to enforce the forum-selection clause. *Nippon Fire & Marine Ins. Co. v. M/V Spring Wave*, 92 F. Supp. 2d 574, 577 (E.D. La. 2000) (emphasis added). Similarly, the *Majestic Electronics* court refused to enforce a forum-selection clause where it believed that the plaintiff produced "sufficient evidence that Chinese courts **might** apply" a clause relieving the carrier of liability in China, where the clause would be invalid in the U.S. under COGSA. *Majestic Electronics, Inc. v. M/V JIN HE*, CV98-6750GHK(CWX), 1999 WL 694186, at *2 (C.D. Cal. May 10, 1999) (emphasis added).

These cases suggest that a party seeking to prevent a forum-selection clause's enforcement under *Sky Reefer* need only demonstrate a **likelihood** that a

-21-

foreign forum will enforce exculpatory clauses or otherwise preclude a party from pursuing statutory remedies available in the United States. Moreover, *Nippon Fire* and *Majestic Electronics* are consistent with *Sky Reefer* because to invalidate a forum-selection clause, *Sky Reefer* only requires a "prospective waiver of a party's right to pursue statutory remedies." *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540 (1995). This is especially true, where, as here, there is no subsequent opportunity for review.

PAE easily meets the *Sky Reefer* burden because a Belgian court, unlike a U.S. court, **will** enforce the BOL's exculpatory clauses and fail to apply the fair notice and opportunity doctrine. *See* Appellants' Opening Brief, p. 33-49. Therefore, the BOL's forum-selection clause is unenforceable.

**C. WHERE A FOREIGN COURT FAILS TO APPLY THE FAIR NOTICE AND OPPORTUNITY DOCTRINE RESULTING IN A DIMINISHED RECOVERY VIS-À-VIS THE RECOVERY IN A U.S. COURT, *BREMEN* AND *SKY REEFER* RENDER A FORUM-SELECTION CLAUSE UNENFORCEABLE.**

Appellees rely on *Pac Global* to argue, "[A] potential diminished recovery in a contractual-foreign forum is not tantamount to a reduction of the carrier's substantive obligations." *PAC Global Insurance v. Gramter International*, 2008 A.M.C. 1766, 1772 (C.D. Cal. 2007). *Pac Global* is distinguishable.

While taking the above-quoted position regarding diminished recovery, the *Pac Global* court explained that a forum-selection clause would be *unenforceable*

where a foreign forum would entirely preclude recovery. *Id.* at 1773. PAE argues first that CC's forum-selection clause is unenforceable because a Belgian court would entirely preclude recovery by enforcing the BOL's exculpatory clauses. Second, if for some reason the Court finds that a Belgian court would not enforce the BOL's exculpatory clauses, PAE submits that a Belgian court, unlike a U.S. court, would inaccurately apply the fair notice and opportunity doctrine and incorrectly find that CC's BOL gave PAE fair notice and opportunity. Consequently, in the U.S., PAE would be able to recover $1.8 million, while in Belgium its recovery would be limited to $500.

The issue is: what caused the diminished monetary recovery in *Pac Global* and what would cause it the instant case. In *Pac Global*, Plaintiffs argued that a U.S. court applying Ninth Circuit precedent would interpret "package" under COGSA to mean each individual package, and thus the package limitation in the BOL would limit recovery to $47,228 for the 720 packages at issue. *Id.* at 1770. The *Pac Global* plaintiffs stressed that in China a "package" means one container holding the 720 boxes, thus limiting recovery to $500. *Id.* at 1771.

Unlike the case law interpreting the meaning of "package" under COGSA, the fair notice and opportunity doctrine is a long-standing, integral part of U.S. substantive law in maritime and non-maritime cases, pre-dating COGSA. *Fireman's Fund Ins. Companies v. Vessel "OOCL CHALLENGE"*, CV 90-6089

MRP, 1991 WL 343373, at *1 n.2 (C.D. Cal. Oct. 3, 1991); *see Union Pac. R.R. v.*

*Burke*, 255 U.S. 317, 320-323 (1921); *see New York, N. H. & H. R. Co. v.*

*Nothnagle*, 346 U.S. 128 (1953). *Bremen* explicitly states, "[A] forum-selection

clause should be held unenforceable if enforcement would contravene a **strong**

**public policy** of the forum in which suit is brought, **whether declared by statute**

**or by judicial decision**." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15

(1972) (emphasis added). The fair notice and opportunity doctrine is a judicially-

created, strong public policy within the meaning of *Bremen*.

Additionally, unlike COGSA case law interpreting the definition of

"package," COGSA statutorily requires that a carrier provide cargo owners with

fair notice and opportunity. 46 U.S.C. 30701, Note, §4(5); s*ee Nemeth v. Gen. S.S.*

*Corp., Ltd.*, 694 F.2d 609, 611 (9th Cir. 1982). Therefore, providing fair notice

and opportunity prior to enforcing a package limitation is a substantive obligation

under *Sky Reefer*.

In sum, this Court should distinguish *Pac Global* and hold that enforcing a

forum-selection clause where the foreign forum might fail to properly apply the

fair notice and opportunity doctrine qualifies as a contravention of "strong public

policy" under *Bremen* – as well as a lessening of the carrier's substantive

obligations under *Sky Reefer*.

## VI. SUPREME COURT AND NINTH CIRCUIT PRECEDENT INVALIDATE ANY BOL CLAUSES ATTEMPTING TO EXCULPATE SSA FOR NEGLIGENTLY DESTROYING PAE'S YACHT.

In *Grace Line, Inc. v. Todd Shipyards Corp.*, 500 F.2d 361, 373 (9th Cir.

1974), the Ninth Circuit stated:

> It is the holding of this court that a contract, no matter how clear and express, which purports wholly to immunize a non-carrier from liability for its negligence, is repugnant to traditional law and to sound policy . . . . Since the 'Himalaya' clause in this case purports to exempt non carriers completely from any liability for negligence, and thereby strongly tends to induce negligence, the bill of lading to that extent is void.

The Ninth Circuit's recent *Fed. Ins. Co. v. Union Pacific R. Co.*, 651 F.3d

1175 (9th Cir. 2011) decision directly conflicts with *Grace Line* and, inexplicably,

does not even mention, much less discuss, *Grace Line*.

*Grace Line* relied on *Atlantic Mutual*, a Supreme Court decision virtually

ignored in *Federal Insurance*, which holds that only Congressional intent can

create exceptions to the general common law rule against exculpatory clauses. *See*

*United States v. Atlantic Mut. Ins. Co.,* 343 U.S. 236, 239 – 43 (1952).

The rule against exculpatory clauses relieving a carrier's subcontractor, such

as SSA, **of all liability for any act** is not a "mechanism of enforcement." It is a

substantive rule against negligent conduct.  Therefore, *Federal Insurance* and

*Grace Line* cannot co-exist. Under *Atlantic Mutual* and *Grace Line,* SSA should remain liable.

Moreover, *Federal Insurance* does not affect PAE's argument against the forum-selection clause's enforcement. PAE maintains that Clause 3(a), exculpating CC, which remains *unenforceable* in the U.S. despite *Federal Insurance*, would be enforced in Belgium. *Sky Reefer* prohibits such a result.

## VII.   STANDARD OF REVIEW OF VENUE MOTIONS.

The Ninth Circuit sitting en banc held that dicta is "a statement . . . made casually and without analysis . . . uttered in passing without due consideration of the alternatives." *United States v. Johnson*, 256 F.3d 895, 913 (9th Cir. 2001). Unlike the *Johnson* court's thorough analysis regarding which standard of review should apply in that case, the Ninth Circuit has not engaged in thorough analysis regarding the standard of review for forum-selection clause dismissals.  *See id.* at 913-916.  In fact, *Pelleport*, which first mentioned the abuse of discretion standard – in a footnote – gave only a cursory explanation for its use in forum-selection clause cases.  *See Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 280 n.4 (9th Cir. 1984).  Thus, the standard is dicta.

Furthermore, this appeal should be reviewed de novo because there are no factual issues.  The District Court's determination regarding which party's expert correctly opined regarding how a Belgian court would apply U.S. law falls

squarely within Federal Rule of Civil Procedure 44.1 – which states that

determination regarding foreign law, "including testimony," are questions of law.

*See* ER 0008-10; *see* Fed. R. Civ. P. 44.1; *see Access Telecom, Inc. v. MCI*

*Telecommunications Corp.*, 197 F.3d 694, 713 (5th Cir. 1999) (differences of

opinion among experts as to the interpretation or *effect* of foreign law do *not* create

an issue of fact).

Therefore, this Court should apply the de novo standard of review here in

order to achieve intra- and inter-circuit consistency. *See* Appellants' Opening

Brief, p. 3-5.

## VIII.  ALL ISSUES WERE EITHER RAISED BELOW OR INVOLVE PURE ISSUES OF LAW.

First, PAE clearly argued below that the Harter Act – and not COGSA –

governs the BOL. ER0040-41 ("[U]S COGSA, which CC and SSA contend applies

. . . the Harter Act, which Plaintiffs believe applies.")  Second, PAE argued below

that the Harter Act applies instead of COGSA because of Section 1(c). *See* ER

0046.  Third, by fastidiously analogizing to each BOL clause in *Columbia*

*Machine*, including Clause 27 – which failed to incorporate COGSA since it did

not negate the effect of COGSA Section 1(c) – PAE argued below that CC's Clause

Paramount failed to incorporate COGSA based on its failure to negate Section 1(c).

*See* ER 0045-48.

In *Woodside*, the Ninth Circuit stated, "If the district court resolved the issue, this court may consider it on appeal." *F.D.I.C. v. Woodside Const., Inc.*, 979 F.2d 172, 174 (9th Cir. 1992). PAE's argument regarding lack of incorporation directly confronts the District Court's finding that CC's BOL "unambiguously" incorporated COGSA. *See* ER 0006. Thus, under *Woodside*, this Court should consider PAE's argument.

Likewise, the District Court rejected PAE's argument that the Harter Act applies by relying on *North River*. ER 0006-7. Thus, under *Woodside*, PAE's argument regarding the Harter Act's applicability and distinguishing *North River* should be considered.

In *Federal Insurance*, appellant argued – for the first time on appeal – that a "covenant not to sue is prohibited by an alternative legal regime – the Harter Act." *Fed. Ins. Co. v. Union Pacific R. Co.*, 651 F.3d 1175, 1177-1178 (9th Cir. 2011). Yet, the Ninth Circuit considered the argument because the Court will consider new arguments on appeal that raise "a purely legal issue [that] does not affect or rely upon the factual record developed by the parties, and will not prejudice the party against whom it is raised." *Id.* at 1178 (9th Cir. 2011) (internal quotations omitted) (citing *Dream Palace v. Cnty. of Maricopa,* 384 F.3d 990, 1005 (9th Cir.2004). An argument does not "affect or rely upon the factual record" where the related facts are "undisputed." 651 F.3d at 1178. Prejudice does not exists where

-28-

the party opposing the new argument has a chance to brief a response to it. *See* 384 F.3d at 1005.

PAE's arguments regarding the Harter Act, Section 1(c), statutory construction, *North River*, and that a merely-incorporated COGSA voids exculpatory clauses are all purely legal. Additionally, there is no prejudice because Appellees have amply briefed responses to these arguments. Therefore, these arguments should be considered.

Moreover, the District Court acknowledged that a merely incorporated-COGSA will not invalidate the BOL's exculpatory clauses but failed to consider that the Harter Act would still apply to render the clauses void. ER 0010 n. 11. This forced PAE's direct response on appeal. Under *Woodside*, this Court should review this argument as well.

## **CONCLUSION**

Almost all of the issues in this case arise from language CC chose to use in its BOL. Now, after CC and its contractor, SSA, negligently destroyed PAE's $1.8 million yacht, CC hopes to exploit the ambiguities it created to send PAE to a foreign court so it can absolve itself and SSA of all responsibility for the damage caused. CC's BOL fails to incorporate COGSA for on-deck carriage because it fails to negate Section 1(c). Rather than simply stating "notwithstanding Section 1(c)," CC now asks the Court to abandon a customary rule of contract

interpretation and make its ambiguous adhesive contract clear so CC can avoid its responsibility for the loss.

CC also asks the court to ignore the word "supersedes" in its BN so it can improperly point to the BN as part of the contract of carriage. Moreover, trying to accomplish what its BOL language does not, CC goes so far as to ask the Court to impose its unilateral stipulation that it will not seek to enforce the exculpatory provisions in a foreign court.

It is too late for CC to attempt to reform or rewrite its BOL. It says what it says and CC and SSA are bound by the language CC used and the laws of interpretation of adhesive contracts. The Harter Act, COGSA and the rules of contract interpretation are meant to level the playing field for a cargo owner such as PAE so it does not have to consult an expert in the law of international carriage when it contracts for carriage of a yacht.

Because the BOL does not properly incorporate COGSA, a Belgian court will be bound to apply Belgian law as required by the BOL's plain language. It therefore will enforce the BOL's exculpatory clauses and there will be no subsequent opportunity for PAE to have that decision reviewed by a US court. Such a result would deprive PAE of substantive rights granted it under US law developed for the very reasons evidenced by CC's attempted use of its BOL's language. Therefore, *Sky Reefer* renders CC's forum-selection clause

-30-

unenforceable.  PAE respectfully asks this Court to reverse the lower court's

decision and remand the case to that court for further proceedings consistent with

this Court's decision.

<u>/s Stanley L. Gibson</u>     Date: November 14, 2011
SBN 047882
Gibson Robb & Lindh LLP
Attorneys for Plaintiffs-Appellants
Pacific Asian Enterprises, Corp.
and RLI Insurance, Co.

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B)(ii) because this brief contains 6,999 words, excluding the parts of the

brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this

brief has been prepared in a proportionally spaced typeface, Times New Roman,

which is a font type that uses serifs, font size 14, using Corel WordPerfect X4.


<u>/s Stanley L. Gibson</u>          Date: November 14, 2011
SBN 047882
Gibson Robb & Lindh LLP
Attorneys for Plaintiffs-Appellants
Pacific Asian Enterprises, Corp.
and RLI Insurance, Co.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Appellate CM/ECF system on November 14, 2011.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ ALICE KNUDSEN

Alice Knudsen

## PROOF OF SERVICE

I am employed in the City and County of San Francisco by the law firm of

GIBSON ROBB & LINDH LLP, 201 Mission Street, Suite 2700, San Francisco,

California 94105. I am over the age of 18 years and not a party to the within

action. I am readily familiar with the practice of GIBSON ROBB & LINDH LLP

with respect to the collection and processing of pleadings, discovery documents,

motions and all other documents which must be served upon opposing parties or

other counsel in litigation. On November 14, 2011, I electronically filed with the

Office of the Clerk, U.S. Court of Appeals for the Ninth Circuit, the following

document(s):

### APPELLANTS' REPLY BRIEF

which will be served by electronic mail notice on the following:

**Electronic Mail Notice List**

**James J McMullen , JR**
JMcMullen@GordonRees.com; PLangevin@gordonrees.com

**Alan Nakazawa**
alan.nakazawa@cnc-law.com; email@cnc-law.com

I declare under penalty of perjury under the laws of the State of California

that the above is true and correct.

Executed on November 14, 2011, at San Francisco, California.

/s/ ALICE KNUDSEN
Alice Knudsen

-34-